# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **NOVIE DALE CARMEN, ET AL.,** | ) | Case No. 1:20-cv-00313 |
| | ) | Judge Douglas R. Cole |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | **DEFENDANT HEALTH** |
| **HEALTH CAROUSEL, LLC,** | ) | **CAROUSEL, LLC'S MOTION TO** |
| Defendant. | ) | **STRIKE CLASS ALLEGATIONS IN** |
| | ) | **PLAINTIFFS' THIRD AMENDED** |
| | ) | **COMPLAINT** |
| | ) | |
| | ) | |

Health Carousel has moved to dismiss the Third Amended Complaint. For the reasons given in that motion, the Court should dismiss the entire complaint. But in the alternative, Health Carousel also moves to strike Plaintiffs' class allegations under Federal Rule of Civil Procedure 12(f) and 23(d)(1)(D). The substantive claims turn on facts specific to each plaintiff, precluding efficient class wide adjudication.

A supporting memorandum accompanies this motion.

Respectfully submitted,

/s/ *Russell S. Sayre*
Russell S. Sayre (0047125)
Beth A. Bryan (0082076)
Brian A. Morris (0093530)
Spencer S. Cowan (0099556)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Phone: (513) 381-2838
Fax: (513) 381-0205
sayre@taftlaw.com
bryan@taftlaw.com
bmorris@taftlaw.com
scowan@taftlaw.com

*Attorneys for Health Carousel, LLC*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **NOVIE DALE CARMEN**, ET AL.,<br><br>    Plaintiffs,<br>v.<br><br>**HEALTH CAROUSEL, LLC,**<br>    Defendant. | Case No. 1:20-cv-00313<br>Judge Douglas R. Cole<br><br>**DEFENDANT HEALTH CAROUSEL, LLC'S MEMORANDUM IN SUPORT OF THE MOTION TO STRIKE CLASS ALLEGATIONS IN PLAINTIFFS' THIRD AMENDED COMPLAINT** |

  The Court should strike Plaintiffs' class allegations. Plaintiffs have little in common beyond the labels they use for their causes of action. The Third Amended Complaint confirms that each named Plaintiff has a story unique to her. By logical extension, so too is the story of every putative class member. Thus, this case is particularly unsuited to class-wide adjudication, which becomes more clear each time a new plaintiff and a new story surfaces. Adjudicating such claims on a class-wide basis would yield few efficiencies and would devolve into scores of "mini-trials" to determine whether each particularized set of facts entitles a particular plaintiff to recovery. If these claims exist at all, they are best left to each individual.

## ANALYSIS[1]

  A court should determine whether class treatment is proper as early as practicable. Fed. R. Civ. P. 23(c)(1)(A). "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). In such a situation, a

---

[1] Health Carousel detailed the allegations in the Third Amended Complaint in its Motion to Dismiss, which Health Carousel filed contemporaneously with this motion to strike. Health Carousel incorporates that background as if fully restated here.

court may strike class allegations before a motion for class certification if the complaint shows on its face that the plaintiff cannot meet the requirements for maintaining a class. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945–46 (6th Cir. 2011).

Such is the case here. The named plaintiffs are inviting the Court to adjudicate dubious TVPA and RICO claims on a class wide basis. But these claims—which more closely resemble garden-variety personal employment complaints—turn on individualized facts and would require the Court to engage in the sort of granular, plaintiff-by-plaintiff analysis that makes class wide adjudication infeasible.

Health Carousel raised concerns with the class allegations in its motion to dismiss the original complaint—arguing that Carmen's proposed class definition was overbroad and that individual issues predominated over any class-wide issues. At the hearing on Health Carousel's initial motion to dismiss, counsel for Carmen (at the time the only named Plaintiff), made much of Carmen's individual experiences and how those experiences, she claimed, could support an inference that she was a victim of human trafficking. In effect, to defend the merits of her merits claims, Carmen herself demonstrated that class-wide adjudication was unsuitable because so much turned on individual situations and experiences. The Court allowed the class definition and allegations to remain, but in doing so, it questioned the viability of the proposed class.

      A.      **Individual issues predominate over class-wide issues.**

The Court's primary concern was with predominance, which requires "that common issues of law or fact 'predominate over any questions affecting only individual members.'" (Doc. 21, Order at PageID #628 (quoting Rule 23(b)(3)).) To satisfy the predominance prong, Plaintiffs "must establish" that class-wide issues, which "are subject to generalized proof," "predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel., Inc.*, 511

F.3d 554, 564 (6th Cir. 2007) (citation and quotation marks omitted). By contrast, a plaintiff cannot maintain a class where "individual issues . . . abound." *Phillips v. Philip Morris Co. Inc.*, 298 F.R.D. 355, 368–69 (N.D. Ohio 2014). For example, when a court has to resolve "individual issues going to the heart of plaintiff's claims" irrespective of class-wide issues, such an inquiry "render[s] class certification impracticable." *Id.* This is a burden that Plaintiffs cannot satisfy.

The Court correctly identified the individual issues at the heart of Carmen's original TVPA claim (in the First Amended Complaint). Indeed, the Court recognized that these individualized issues are enshrined in the statutory definition of "serious harm." (*See* Doc. 21, Order at PageID #628.) "Under the statute, the Court must analyze 'all [of] the surrounding circumstances' in determining whether a reasonable person would feel compelled to perform labor." (*Id.* (quoting 18 U.S.C. § 1589(c)(2)). In other words, the TVPA places an individual's "surrounding circumstances" at the heart of the claim, which under the plain text of the statute, the Court must consider and evaluate. As a result, the Court explained that class-wide treatment of a TVPA claim depends on whether the "surrounding circumstances" are more individualized or more generalized. (*Id.* at PageID #629.)

The Court then highlighted some of Carmen's individual circumstances that cut against class-wide resolution of the TVPA claim. This included, for example, Carmen's living situation ("she is 'renting' an apartment with her boyfriend" rather than in "Health Carousel-provided housing"). (*Id.*) The Court did note two aspects of Carmen's TVPA allegations that "may be more easily generalizable," and thus, appropriate for class treatment. (*Id.* at PageID #628–29.)

*First*, the Court relied on Carmen's allegation "that Health Carousel had a policy of acting to delay licensing, thereby purposefully extending a nurse's Commitment Period." (*Id.* at PageID #629.) This Court took the allegations about "slow-rolling" Plaintiff Carmen's license

4

seriously, noting Health Carousel's licensing process "bear[s] at least some resemblance to the bait-and-switch tactics" proscribed by the TVPA. (*Id.* at PageID #618.) *Second*, the Court pointed to "Carmen's allegations of forced overtime . . . [at] her hospital." (*Id.* at PageID #629.) These two issues, at least hypothetically in the Court's view, could satisfy the predominance requirement under Rule 23(b)(3).  It is now plain that Plaintiffs cannot clear this hurdle.

It is no small irony that the Third Amended Complaint and the addition of Amistoso and Flores as two new named plaintiffs eliminate whatever traction Carmen might have had for class-wide treatment. *First*, the new complaint abandons the allegation that Health Carousel "slow-walked" her license to extend the Commitment Period.  Plaintiffs removed allegations contained in the original Complaint that Health Carousel purposefully delayed obtaining permanent licenses for nurses in order to extract as much labor as possible from each nurse (not surprising, given that the allegation was not true). This eliminates the primary allegation that the Court thought might support a hypothetical TVPA claim – and class-wide treatment of that claim. (*See, e.g.*, Doc. 18, Tr. at PageID #563–68.)

*Second*, Amistoso's and Flores's circumstances are vastly different from Carmen's – especially when it comes to pay and overtime. This shows why TVPA claims are better left to individuals (not a class). For example, Carmen alleges that she had to work overtime "due to understaffing" at her hospital and that she was "responsible for too many patients." (Third Am. Compl., Doc. 43 ¶¶ 127–28, PageID #1008.) By contrast, Amistoso complains about driving too much between appointments and that she was "required to perform hours of paperwork unpaid." (*Id.* ¶¶ 133–34, PageID #1009.) She also claims that she was the victim of "downsizing" at her facility and that she was forced to wait for a new position, without pay, or move to another state.

(*Id.* ¶ 159, PageID #1013.) Amistoso also alleges that "she was not entitled to holiday pay," and that she had a "30-visit per week requirement." (*Id.* ¶ 135, PageID #1009.)

Not one of Amistoso's circumstances applies to Carmen or Flores. Nor does Flores share any circumstances with Carmen. For example, Flores does not allege that she was unpaid for any task, that there were understaffing issues at her hospital, or that she was responsible for too many patients. (*See id.* ¶¶ 138–43, PageID #1010–11.) In fact, Flores offers no specific allegations about why she had to work overtime -- or that her overtime was anything but normal work-related overtime. (*Id.* ¶ 140, PageID #1010.) Put simply, the allegations that Carmen, Amistoso, and Flores offer in support of their claims are very different, one from the other.

More fundamentally, Carmen, Amistoso, and Flores had different visas, different work situations, different payment arrangements, different family considerations (*e.g.*, Amistoso alleges that she could not take a new job elsewhere because of her baby, but Carmen moved with help from her boyfriend, and Flores wanted to stay with her husband), and different experiences leaving Health Carousel. Carmen paid her liquidated damages, Amistoso did not, and Flores tried to negotiate a partial payment while raising mental health issues. (*Compare id.* ¶ 153, PageID #1012, *with* ¶¶ 16568, *and* ¶¶ 172–74, PageID #1014–16.) So even if Carmen can allege a TVPA claim under her circumstances, Amistoso can allege a TVPA claim under her circumstances, and Flores can allege a TVPA claim under her circumstances, the Court necessarily has to resolve the claims one at a time. That makes class-wide treatment of these claims unworkable. *See, e.g.*, *Phillips*, 298 F.R.D. at 368 (denying class-wide treatment of claims because each plaintiff's claim "depends upon the manner in which each consumer used the product and the unique characteristics of each consumer").

6

Indeed, if the "surrounding circumstances" vary so greatly between just the three **named** plaintiffs, any common issues cannot predominate over the unknown individual issues within the putative class. After all, as the Court noted, individual "circumstances" are built into 18 U.S.C. § 1589(c)(2). As a result, if these claims are viable at all, they are best left to each individual.

B.     **A class action is not superior.**

The proposed class also fails under Rule 23(b)(3)'s requirement that a class action must be superior to individual actions. When addressing superiority, "[t]he Court must weigh, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Kemp v. Medtronic Inc.*, No. 1:97-cv-00103, 1998 WL 35161989, at *9 (S.D. Ohio Feb. 11, 1998) (quoting *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 632 (3d Cir. 1996) (internal quotation marks omitted)). And a court should strike class allegations when a class would not help resolve individual claims. *See, e.g.*, *Pilgrim*, 660 F.3d at 946–50.

For example, a class action is a poor vehicle to resolve claims when the Court will "need to separately litigate many individual facts and issues." *Kemp*, 1998 WL 35161989, at *9. Parsing individual issues from common issues, as the Court would have to do here, is "difficult and even a waste of judicial time and economy." *Id.* (collecting cases). This is especially true when each individual case involves non-trivial damages, making it "economically feasible for individuals to pursue individual actions." *Id.* (citing *Georgine*, 521 U.S. at 617) (explaining that class actions are a mechanism to overcome the problem with "small recoveries and thus little incentive to litigate").

That is the exact problem with this proposed class: Each putative class member has a compelling incentive to pursue individual claims. For example, the claims related to just the liquidated damages, according to Plaintiffs, are worth $20,000 *at a minimum*—and could be

7

worth over $50,000 or even $70,000, plus interest and costs, *for each individual*. (Doc. 43, ¶¶ 79, 87, 93, 96.) What's more, this does not include other claimed damages, or any alleged punitive damages. (*Id.* ¶¶ 218, 223, 227, 231, 276.) Thus, each individual has a substantial interest in pursuing their own action.

Put simply, tens-of-thousands (or even hundreds-of-thousands) of dollars in alleged damages per putative class member is not better suited to class wide adjudication. *C.f. Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 292 (6th Cir. 2016) (approving a class payout that averaged $31.99 per member). These allegedly high-value and individualized claims are best left to each individual. If any of these people have been wronged, they have an incentive to pursue their claims, independent of others who also happened to have worked for Health Carousel and have grievances of their own. The Court should, at a minimum, strike the class allegations.

## CONCLUSION

The Court should dismiss the Third Amended Complaint. But if the Court is inclined to deny, in whole or in part, Health Carousel's motion to dismiss, the Court should at least strike the class allegations.

/s/ *Russell S. Sayre*
Russell S. Sayre (0047125)
Beth A. Bryan (0082076)
Brian A. Morris (0093530)
Spencer S. Cowan (0099556)
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Phone: (513) 381-2838
Fax: (513) 381-0205
sayre@taftlaw.com
bryan@taftlaw.com
bmorris@taftlaw.com
scowan@taftlaw.com

*Attorneys for Health Carousel, LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the above was filed electronically, on January 3, 2022. Notice of this filing will be sent to all parties through the Court's electronic filing system.

<u>/s/ <i>Russell S. Sayre</i></u>