## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| Novie Dale Carmen, Jerlin C. Amistoso, and Kersteen B. Flores, individually and as Representatives of the Classes, | Case No. 1:20cv00313<br>Judge Douglas R. Cole |
| Plaintiffs, | **JOINT MOTION FOR FINAL SETTLEMENT APPROVAL** |
| v. | |
| Health Carousel, LLC, | |
| Defendant. | |

Plaintiffs Novie Dale Carmen, Jerlin Amistoso, and Kersteen Flores, together with Defendant Health Carousel, LLC (collectively, the "parties") move this Court for final settlement approval under Federal Rule of Civil Procedure 23. The proposed settlement provides significant monetary and non-monetary relief to the class and is a fair, reasonable, and adequate resolution of this dispute. Accordingly, the parties request that the Court maintain certification of the Rule 23 classes for settlement purposes on the federal TVPA and RICO claims,[1] overrule the objections to the Settlement, and grant final settlement approval so that Health Carousel can distribute settlement funds to the class and implement the agreed upon non-monetary relief. The Class Representatives and Class Counsel further respectfully request that the Court grant their requested fees, costs, administrative expenses, and service payments (Mot. for Fees, Costs, Admin. Exp., Serv. Paymt., ECF No. 87). Health Carousel takes no position on those requests.

*The parties' supporting memorandum accompanies this motion.*

---

[1] The parties agree to dismissal of the Ohio claims in this case. (*See* Prelim. Approval Order, PAGEID5849-5850, ECF No. 86 (regarding choice of law and jurisdiction).)

Respectfully submitted this 8th day of October, 2024.

**NICHOLS KASTER, PLLP**

**s**/ Anna P. Prakash
Anna P. Prakash, MN Bar No. 0351362*
Joshua R. Cottle, NY Bar No. 5914676*
aprakash@nka.com
jcottle@nka.com
4700 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Phone: (612) 256-3200
Fax: (612) 338-4878

s/ Robert E. DeRose
Robert E. DeRose (OH Bar No. 0055214)
**BARKAN MEIZLISH DEROSE
WENTZ MCINERNEY PEIFER, LLP**
bderose@barkanmeizlish,com
250 East Broad Street, 10th Floor
Columbus, OH 43215
Phone: (614) 221-4221

**DONATI LAW**
Bryce Ashby
bryce@donatilaw.com
1545 Union Avenue
Memphis, TN 38104
Phone: (901) 209-5500

**TOWARDS JUSTICE**
David H. Seligman, CO Bar No. 49394*
Valerie Collins, MD Bar*
david@towardsjustice.org
PO Box 371680, PMB 44465
Denver, CO 80237-5680
Phone: (720) 295-1672

**GUPTA WESSLER, PLLC**
Jennifer Dale Bennett CA Bar No. 296726*
jennifer@guptawessler.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Phone: (415) 573-0336

*CLASS COUNSEL*
*admitted *pro hac vice*

**TAFT STETTINIUS & HOLLISTER LLP**

s/ Beth A. Bryan
Beth A. Bryan (0082076)
Spencer S. Cowan (0099556)
Russell S. Sayre (0047125)
Kenneth A. Foisy (0095904)
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Telephone: (513) 357-9460
Facsimile: (513) 381-0205
bryan@taftlaw.com
scowan@taftlaw.com

*ATTORNEYS FOR HEALTH CAROUSEL, LLC*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| Novie Dale Carmen, Jerlin C. Amistoso, and Kersteen B. Flores, individually and as Representatives of the Classes, | Case No. 1:20cv00313<br>Judge Douglas R. Cole |
|       Plaintiffs, | |
| v. | |
| Health Carousel, LLC, | |
|       Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' JOINT MOTION FOR FINAL SETTLEMENT APPROVAL

## TABLE OF CONTENTS

**INTRODUCTION**................................................................................................................1

**BACKGROUND**................................................................................................................2

**I.**        **Summary of the Claims, Litigation, and Settlement Negotiations** ................................2

**II.**       **The Settlement Agreement** ................................................................................................3

          **A.**      **Settlement Class and Collective and Released Claims** ................................3

          **B.**      **Monetary Relief and Settlement Allocations** ................................................4

          **C.**      **Non-Monetary Relief** ................................................................................6

          **D.**      **Distribution of Settlement Funds** ................................................................8

**III.**     **Notice and Related Events Following Settlement and Preliminary Approval** ............9

          **A.**      **CAFA Notice** ................................................................................................9

          **B.**      **Preliminary Approval and Class Notices** ................................................9

                **1.**      **The Class List** ................................................................................9

                **2.**      **Postcard Notice** ..........................................................................10

                **3.**      **FLSA Reminder Notice** ..............................................................10

                **4.**      **Settlement Website and Long Form Notices** ..........................10

                **5.**      **Additional Class Members** ........................................................11

           **C.**      **Class Members' Response** ..........................................................................11

           **D.**      **Fee Petition** ................................................................................................12

**IV.**     **Summary of Relevant Statistics and Numbers** ..........................................................12

**ARGUMENT** ..................................................................................................................14

**I.**        **The Court Should Confirm Certification of the Settlement Classes** ..........................14

**A.      Numerosity is Satisfied.** ....................................................................16

The proposed Group A Settlement Class includes 3,854 members, and the proposed Group B Settlement Class includes 1,798 members. Each proposed Settlement Class satisfies the numerosity requirement. *See Pansiera v. Home City Ice Co.*, 341 F.R.D. 223, 231 (S.D. Ohio 2022).

**B.      Commonality is Satisfied.** ...................................................................16

Plaintiffs challenge similar conduct and policies stemming from nearly identical contractual arrangements. Commonality is satisfied because the core questions in this case could be answered based upon common policies and practices. *See, e.g., Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 543 (6th Cir. 2012).

**C.      Typicality is Satisfied.** .........................................................................17

Plaintiffs and the Settlement Class Members are healthcare workers from abroad who were recruited into Health Carousel's Passport USA program, subject to similar contracts and policies, and were placed at healthcare facilities operated by Health Carousel's clients. Plaintiffs and the Settlement Class Members' alleged harm arises from the same course of conduct and rely on the same legal theory to challenge this alleged harm. As a result, Plaintiffs satisfy the typicality requirement. *See, e.g.*, *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007).

**D.      Adequacy is Satisfied.** .........................................................................18

Plaintiffs and Class Counsel are adequate because their claims and legal interests are aligned with the members of the Settlement Classes. Plaintiff Carmen shares similar experience as the Group A Settlement Class Members and Plaintiffs Amistoso and Flores share a similar experience as the Group B Settlement Class Members. Plaintiffs have been significantly involved in this action throughout investigation, discovery, and mediation. Class Counsel have extensive experience representing workers in class and collective actions, which makes them well qualified here.

**E.      The Group A Settlement Class Meets the Requirements of Rule 23(b)(3).** .....20

Common facts would drive resolution of this litigation. Each Group A Settlement Class Member was subject to similar "liquidated damages" provisions in their contracts and those who are currently working for Health Carousel are doing so subject to similar contract terms. In addition, resolution of this matter as a class action achieves economies of time, effort, and expense, and promotes uniformity of results, especially where the available recoveries in individual cases could be small and cost-prohibitive. The predominance and superiority requirements are satisfied here. *See, e.g., Davis v. GEICO Cas. Co.*, No. 2:19-cv-2477, 2021 WL 5877843, at *8 (S.D. Ohio Dec. 13, 2021); *Beattie v. CenturyTel, Inc.*, 511 F.3d

554, 561 (6th Cir. 2007).

F.    The Group B Settlement Class Meets the Requirements of Rule 23(b)(2). ....22

Through this Settlement, Health Carousel is taking action that would apply across-the-board to Group B Settlement Class Members by no longer seeking "liquidated damages" and, for Class Members that still worked for Health Carousel as of February 15, 2024, only seeking prorated actual costs. *See Legere-Gordon v. Firstcredit Inc.*, No. 1:19-cv-360-WBS, 2021 WL 276695, at *6 (D. Idaho Jan. 26, 2021).

II.    The Court Should Grant Final Approval of the Parties' Settlement. .........................22

A.    Plaintiffs and Class Counsel Have Adequately Represented the Class
       and Collective and Support the Proposal - Rule 23(e)(2)(A) and
       *UAW* Factor 5. ....................................................................................................23

Plaintiffs and Class Counsel have fulfilled their duties to act on behalf of the Settlement Class. Class Counsel have significant experience in class and collective action litigation and settlements and believe this Settlement is in the best interest of the Settlement Class. *See Smith v. Ajax Magnethermic Corp.*, No. 4:02-cv-0980, 2007 WL 3355080, at *5 (N.D. Ohio Nov. 7, 2007).

B.    The Proposal Was Negotiated at Arm's Length Without Fraud or
       Collusion – Rule 23(e)(2)(B) and *UAW* Factor 1. ..............................................25

The parties participated in mediation in December 2023 following significant, extensive, and contentious discovery. Following an agreement on key terms at the mediation, the parties continued arms-length negotiations for nearly three months. Counsel for both parties aver that all negotiations were at arms-length and believe this Settlement is fair, reasonable, and adequate. *See Clark v. Miller Valentine Partners Ltd.*, No. 1:20-cv-295, 2023 WL 5087233, at *5 (S.D. Ohio Aug. 8, 2023).

C.    The Proposal Provides Adequate Relief to the Settlement Class –
       Rule 23(e)(2)(C) and UAW Factors 2-4. ............................................................26

       1.    The Settlement Benefits are Adequate and the Proposal Treats
             Settlement Class Members Equitably Relative to Each Other –
             Rule 23(e)(2)(C) and Rule 23(e)(2)(D). ...................................................26

             a.    The Settlement Provides Adequate Relief. ..............................26

The Gross Settlement Amount is $6,050,000, Health Carousel is forgiving approximately $8,300,000 of disputed debt, and Health Carousel is making significant programmatic changes. This pushes the value of this Settlement above 50% of Plaintiffs' mediation demand and approximately five percent of Plaintiff's

calculated maximum class-wide damages. *See, e.g., Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 WL 757123, at *8 (S.D. Ohio Feb. 18, 2021).

**b.** **The Settlement Provides Equitable Relief.** ................................28

Settlement Class Members are treated equitably because the amount they would receive under the Settlement is based on proportionate considerations of amounts paid and the type and extent of alleged injuries. This equitable treatment is consistent with Rule 23. *See Fusion Elite All Stars v. Varsity Brands, LLC*, No. 2:20-cv-02600-SHL-MP, 2023 WL 6466398, at *5 (W.D. Tenn. Oct. 4, 2023).

**2.** **The Complexity, Expense, Likelihood of Success on the Merits, Amount of Discovery, Risks, and Delay of Trial and Appeal Support Approval - Rule 23(e)(2)(C)(i) and *UAW* Factors 2-4.**...........30

The relief provided through this Settlement is even more meaningful given the uncertain nature of this case. Given the amount of discovery completed, the parties are well-informed of the record and the risks of continued litigation. The expenses already incurred and anticipated to incur should this action proceed further, including depositions and experts, also weigh in factor of approval. *See Clark v. Miller Valentine Partners Ltd.*, No. 1:20-cv-295, 2023 WL 5087233, at *5-6 (S.D. Ohio Aug. 8, 2023).

**3.** **The Proposed Method of Distributing Relief is Effective – Rule 23(e)(2)(C)(ii).** ...........................................................................................33

The proposed method of distribution of benefits and implementation of non-monetary relief is effective. Payments will be made directly to Settlement Class Members and permit Settlement Class Members to easily request an alternative. In addition, Health Carousel will automatically implement the programmatic changes upon Final Approval. This supports approval.

**4.** **The Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment, are Fair - Rule 23(e)(2)(C)(iii).** ...........33

Class Counsel's attorneys' fee petition, which requested one-third of the Gross Settlement Amount and a 1.9 multiplier, is consistent with amounts awarded in similar litigation. *See Fitzgerald v. P.L. Mktg., Inc.*, No. 2:17-cv-2251, 2020 WL 7764969, at *12 (W.D. Tenn. Feb. 13, 2020); *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 WL 757123, at *8 (S.D. Ohio Feb. 18, 2021).

**5.** **There are No Agreements Required to be Identified under Rule 23(e)(3) – Rule 23(e)(2)(C)(iv).** .........................................................36

6.      **The Reaction of the Absent Class Members and the Public Interest Support Settlement – *UAW* Factors 6 and 7** ...........................36

The class notice program is estimated to have reached 98.7% of the settlement class, and, of the more than 4,000 class members, only three individuals excluded themselves from the settlement and three individuals objected. This supports approval. *See Stephens v. ADS All. Data Sys., Inc.*, No. 2:20-cv-2152, 2024 WL 958331, at *1 (S.D. Ohio Mar. 5, 2024).

a.      **The Court Should Overrule the Three Objections Filed in this Case.** ..........................................................38

i.      **Changing the Commitment Period for Current Employees is Unworkable Because of Health Carousel's Existing Contracts with its Healthcare Facility Clients.** ................................................................39

The objectors' request to change the commitment period for current employees should be overruled because it is unworkable and would require Health Carousel to renegotiate and alter the terms of its contracts with each of its clients, for which there is no guarantee it could do so. *See, e.g.*, *In re Airline Ticket Com'n Antitrust Litig.*, 953 F. Supp. 280, 285 (D. Minn. 1997).

ii.      **Plaintiffs Did Not Seek Damages Equal to the Difference Between What Health Carousel's Clients Paid Health Carousel and What Health Carousel Paid Its Workers.** ...............................................40

The objectors' second request that Health Carousel return the difference in the money that Health Carousel was paid by its clients and the wages it paid to class members should be overruled because Plaintiffs never sought damages equal to this difference and doubt that they could successfully set forth this theory of damages under the law. *See Skochin v. Genworth Fin., Inc.*, No. 3:19-cv-49, 2020 WL 6532833, at *19 (E.D. Va. Nov. 5, 2020).

b.      **The Public Interest Supports Final Settlement Approval.** ........41

The public interest supports approval because this Settlement results in immediate benefits to the class members and avoids the risks of continued litigation. *See Stephens v. ADS All. Data Sys., Inc.*, No. 2:20-cv-2152, 2024 WL 958331, at *5 (S.D. Ohio Mar. 5, 2024).

**CONCLUSION** .......................................................................................................41

## **TABLE OF AUTHORITIES**

### **Cases**

*Amchem Prod., Inc. v. Windsor*
521 U.S. 591 (1997)..................................................................................21

*Andrews v. State Auto Mutual Ins. Co.*
No. 2:21-cv-5867, 2023 WL 7018839 (S.D. Ohio Oct. 25, 2023) .........................................27, 35

*Beattie v. CenturyTel, Inc.*
511 F.3d 554 (6th Cir. 2007) ...............................................................17, 21

*Carr v. Guardian Healthcare Holdings, Inc.*
No. 2:20-cv-6292, 2022 WL 501206 (S.D. Ohio Jan. 19, 2022)...........................................35, 36

*Clark v. A&L Homecare & Training Ctr., LLC*
64 F.4th 1003 (6th Cir. 2023) ...............................................................15

*Clark v. Miller Valentine Partners Ltd.*
No. 1:20-cv-295, 2023 WL 5087233 (S.D. Ohio Aug. 8, 2023) ..................................25

*Combs v. Trugreen Ltd. Partnership*
No. 1:08-cv-489, 2010 WL 11636094 (S.D. Ohio Sept. 2, 2010).........................................29, 30

*Davis v. GEICO Cas. Co.*
No. 2:19-cv-2477, 2021 WL 5877843 (S.D. Ohio Dec. 13, 2021).................................30

*Dillworth v. Case Farms Processing, Inc.*
No. 5:08-cv-1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010).................................27

*Davis v. Omnicare, Inc.*
No. 5:18-cv-142-REW, 2021 WL 1214501 (E.D. Ky. Mar. 30, 2021) ........................29

*Does 1-2 v. Deja Vu Servs., Inc.*
925 F.3d 886 (6th Cir. 2019) ...............................................................15, 32

*Estavilla v. Goodman Grp., LLC*
No. 21-cv-68-M-KLD, 2022 WL 539192 (D. Mont. Feb. 23, 2022) ...........................31

*Fidel v. Farley*
534 F.3d 508 (6th Cir. 2008) ...............................................................34

*Fitzgerald v. P.L. Mktg., Inc.*
No. 2:17-cv-2251, 2020 WL 7764969 (W.D. Tenn. Feb. 13, 2020) ...........................34

*Fusion Elite All Stars v. Varsity Brands, LLC*
No. 2:20-cv-02600-SHL-MP, 2023 WL 6466398, (W.D. Tenn. Oct. 4, 2023)............................28

*Gilstrap v. Sushinati, LLC*
__ F. Supp. 3d __, 2024 WL 2197824 (S.D. Ohio May 15, 2024)................................................15

*Grunin v. Int'l House of Pancakes*
513 F.2d 114 (8th Cir. 1975) ........................................................................................................37

*Hawes v. Macy's Inc.*
No. 1:17-cv-754, 2023 WL 8811499 (S.D. Ohio Dec. 20, 2023)............................................28, 30

*Hummel v. Teijin Automotive Techs., Inc.*
No. 2:23-cv-10341, 2024 WL 4278752 (E.D. Mich. Sept. 24, 2024) ...........................................36

*Humphrey v. Stored Value Cards*
No. 1:18-cv-01050, 2021 WL 110786 (N.D. Ohio Jan. 12, 2021) ................................................30

*Hunter v. Booz Allen Hamilton Inc.*
No. 2:19-cv-00411, 2023 WL 3204684 (S.D. Ohio May 2, 2023)................................................36

*In re Airline Ticket Com'n Antitrust Litig.*
953 F. Supp. 280 (D. Minn. 1997)................................................................................................40

*In re Cardinal Health Inc. Sec. Litig.*
528 F. Supp. 2d 752 (S.D. Ohio 2007) .........................................................................................34

*In re Flint Water Cases*
571 F. Supp. 3d 746 (E.D. Mich. 2021).............................................................................28, 29, 30

*In re LifeLock, Inc. Mktg. & Sales Pracs. Litig.*
No. 08-mdl-1977-MHM, 2010 WL 11627648 (D. Ariz. Aug. 31, 2010)....................................22

*In re Nationwide Fin. Servs. Litig.*
No. 2:08-cv-00249, 2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) ............................................31

*In re Polyurethane Foam Antitrust Litig.*
No. 1:10-md-2196, 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) .............................................26

*In re Rite Aid Corp. Sec. Litig.*
146 F. Supp. 2d 706 (E.D. Pa. 2001) ............................................................................................27

*In re Se. Milk Antitrust Litig.*
No. 2:07-cv-208, 2012 WL 12875983 (E.D. Tenn. July 11, 2012) ..............................................34

*In re Telectronics Pacing Sys., Inc.* ...................................................................................23
137 F. Supp. 2d 985 (S.D. Ohio 2001) ..............................................................................23

*Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. General
Miller v. Republic Nat. Life Ins. Co. Motors Corp.*
497 F.3d 615 (6th Cir. 2007) ............................................................................................23

*New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*
234 F.R.D. 627 (W.D. Ky. 2006)........................................................................................34

*Karpik v. Huntington Bancshares Inc.*
No. 2:17-cv-1153, 2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ....................................34

*Legere-Gordon v. Firstcredit Inc.*
No. 1:19-cv-360-WBS, 2021 WL 276695 (D. Idaho Jan. 26, 2021)................................22

*Lonardo v. Travelers Indem. Co.*
706 F. Supp. 2d 766 (N.D. Ohio 2010)..............................................................................35

*Magtoles v. United Staffing Registry, Inc.*
No. 21-cv-1850-KAM-PK, 2022 WL 1667005 (E.D.N.Y. May 25, 2022)......................21

*Magtoles v. United Staffing Registry, Inc.*
No. 21-cv-1850-KAM-PK, 2023 WL 2710178 (E.D.N.Y. Mar. 30, 2023) .....................31

*Magtoles v. United Staffing Registry, Inc.*
No. 1:21-cv-01850-PK, ECF No. 80 (Mar. 11, 2024) ......................................................27

*Paguirigan v. Prompt Nursing Emp. Agency LLC*
No. 17-cv-1302-NG-JO, 2018 WL 4347799 (E.D.N.Y. Sept. 12, 2018) ...............17, 20

*Paguirigan v. Prompt Nursing Employ. Agency, LLC*
No. 17-cv-1302-NG, 2019 WL 4647648 (E.D.N.Y. Sept. 24, 2019)................................31

*Pansiera v. Home City Ice Co.*
341 F.R.D. 223 (S.D. Ohio 2022)......................................................................................16

*Pansiera v. Home City Ice Co.*
No. 1:19-cv-1042, 2024 WL 813759 (S.D. Ohio Feb. 27, 2024) ....................................35

*Peregrina v. Seam Group, LLC*
No. 1:20-cv-01032-SO, ECF No. 26 (N.D. Ohio Aug. 30, 2021) ....................................29

*Retina Assocs. Med. Grp., Inc. v. Keeler Instruments, Inc.*
No. 18-cv-01358, 2019 WL 13043767 (C.D. Cal. Dec. 13, 2019)....................................35

*Rotondo v. JPMorgan Chase Bank, N.A.*
No. 2:19-cv-2328, 2019 WL 6167086 (S.D. Ohio Nov. 20, 2019) ............................................35

*Satterly v. Airstream, Inc.*
No. 3:19-cv-107, 2020 WL 6536342 (S.D. Ohio Sept. 25, 2020) ................................................29

*Schulte v. Fifth Third Bank*
805 F. Supp. 2d 560 (N.D. Ill. 2011) ...........................................................................................40

*Senter v. Gen. Motors Corp.*
532 F.2d 511 (6th Cir. 1976) .......................................................................................................18

*Shanechian v. Macy's*
No. 1:07-cv-828, 2013 WL 12178108 (S.D. Ohio June 25, 2013) ..............................................31

*Skochin v. Genworth Fin., Inc.*
No. 3:19-cv-49, 2020 WL 6532833 (E.D. Va. Nov. 5, 2020) ......................................................40

*Smith v. Ajax Magnethermic Corp.*
No. 4:02-cv-0980, 2007 WL 3355080 (N.D. Ohio Nov. 7, 2007)................................................23

*Smith v. Fifth Third Bank*
No. 1:18-cv-722, 2021 WL 11713313 (S.D. Ohio August 31, 2021)...........................................34

*United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co.*
447 F.2d 647 (7th Cir. 1971) .......................................................................................................37

*U.S. v. Philip Morris USA, Inc.*
396 F.3d 1190 (D.C. Cir. 2005)....................................................................................................40

*Stephens v. ADS All. Data Sys., Inc.*
No. 2:20-cv-2152, 2024 WL 958331 (S.D. Ohio Mar. 5, 2024) ..................................................37

*Volz v. Coca Cola Co.*
No. 1:10-cv-879, 2015 WL 1474958 (S.D. Ohio Mar. 31, 2015) ................................................28

*Ware v. CKF Enterprises, Inc.*
No. 5:19-cv-183-DCR, 2020 WL 2441415 (E.D. Ky. May 12, 2020) ...................................21, 29

*Williams v. Vukovich*
720 F.2d 909 (6th Cir. 1983) .......................................................................................................23

*Young v. Nationwide Mut. Ins. Co.*
693 F.3d 532 (6th Cir. 2012) .......................................................................................................17

## **INTRODUCTION**

After years of litigation, lengthy settlement negotiations, preliminary settlement approval, and notice to absent class members, the parties now move for Final Approval of their Settlement.[1] The Settlement provides significant monetary and/or non-monetary relief to more than 4,000 of Health Carousel's current and former employees, including a Gross Settlement Amount of $6,050,000, debt forgiveness, and programmatic changes that address key issues in this lawsuit. Moreover, the Settlement has received strong support from the Settlement Class, garnering only three requests for exclusion and three objections. The objections, while well-meaning, do not provide a sound legal basis to deny final approval and the exclusions amount to less than one percent of the Settlement Class. The Rule 23 factors, too, support approval. The Class Representatives and Class Counsel have adequately represented the Settlement Class and achieved this Settlement through private mediation and arm's length negotiations. The Settlement provides the Settlement Class adequate relief when considering the costs, risks, and delay of trial and appeal, the effectiveness of distributing monetary relief through direct deposit, the proposed attorneys' fees, costs, expenses, and service payments that are consistent with those awarded in similar cases, and the absence of any side agreements. And the Settlement treats Settlement Class Members equitably relative to each other, with Settlement Class Members receiving consideration appropriate to the claims they are releasing and their employment position with respect to their status with Health Carousel. In short, the Settlement is fair, reasonable, and adequate.

Accordingly, the parties respectfully request that the Court maintain certification of the proposed Rule 23 Settlement Classes on the federal claims in this lawsuit and grant Final Approval.

---

[1] Capitalized terms are defined in the parties' Amended Settlement Agreement. (PAGEID 5739-5835, ECF No. 85-1.)

## BACKGROUND

**I.     Summary of the Claims, Litigation, and Settlement Negotiations**

This case is about Health Carousel's recruitment and employment of foreign healthcare workers. (*See* Prelim. Approval Mem., PAGEID 1554-1555, ECF No. 73.) Class Representatives Novie Carmen, Jerlin Amistoso, and Kersteen Flores are three such workers. (*Id.*) They, like Health Carousel's other recruits, signed an employment contract that required them to work a set number of hours for Health Carousel (the "Commitment Period"). (*Id.*) Health Carousel sponsored their immigration visa and paid costs associated with bringing them to the United States. But under the contract, if a worker were to leave before completing their Commitment Period, they would owe Health Carousel a set amount of money. (*Id.*) Ms. Carmen left before the end of her Commitment Period and paid Health Carousel $20,000. Dr. Amistoso and Ms. Flores left before the end of their Commitment Periods but did not pay. Absent this Settlement, according to Health Carousel, they would owe Health Carousel tens of thousands of dollars.

Based on this and related practices, Plaintiffs brought federal and state forced labor claims, federal and state racketeering claims, and a Fair Labor Standards Act ("FLSA") claim against Health Carousel. (*Id.*) Plaintiff Carmen brought the FLSA claim on behalf of herself and a proposed collective of former workers who paid Health Carousel in connection with leaving before the end of their Commitment Periods. (*Id.*)  Plaintiffs brought the remaining claims on behalf of themselves and proposed Rule 23 classes of all current and former workers who entered the United States through Health Carousel's Passport USA program during the statutory period. (*Id.*)

Plaintiff Carmen filed this lawsuit in March 2020. (*Id.*, PAGEID 1555-1557.) Health Carousel moved to dismiss and, after amending and briefing a renewed motion to dismiss, as well as a motion to strike class allegations, Plaintiff prevailed and the parties began discovery. (*Id.*)

Then, through stipulations at the end of 2021, Plaintiffs amended the complaint to add Dr. Amistoso and additional claims and again to add Ms. Flores. (*Id.*) Health Carousel again moved to dismiss, strike class allegations, and stay discovery. (*Id.*) The Court denied each motion. (*Id.*)

The parties engaged in significant discovery relevant to class certification and Plaintiffs' experiences, including exchanging written discovery and thousands of documents. (*Id.*) Each of the Class Representatives were deposed, as were two of Health Carousel's current or former employees and Health Carousel itself through a corporate designee. (*Id.*)

In December of 2023, the parties engaged in an all-day mediation session with Hon. Diane Welsh (Ret.) of JAMS in Philadelphia. Mediation resulted in agreement on key settlement terms. (*Id.*) The parties continued arms-length negotiations between counsel for approximately three months and then requested a telephonic meeting with Judge Welsh to assist the parties in resolving a hotly disputed term. (*Id.*) The parties executed the full Settlement Agreement on March 19, 2023. After the Court requested clarification over a definition in the Agreement, the parties executed an amended agreement on June 4, 2023. (Amend. Agrmt., PAGEID 5739-5835, ECF No. 85-1.)

## II.     The Settlement Agreement

### A.     Settlement Class and Collective and Released Claims

The proposed Settlement would provide monetary relief to a proposed Settlement Classes and Collective defined as:

> <u>Group A Settlement Class</u>: All healthcare workers who entered the United States through Defendant's Passport USA program at any point from March 16, 2010 to February 15, 2024, who do not submit a timely and valid written notice of intent to opt-out, and who as of February 15, 2024: (1) paid Health Carousel some or all "liquidated damages" for leaving before the end of their Commitment Period; (2) completed their Commitment Period; or (3) are current employees. To be clear, anyone who had completed their Commitment Period as of February 15, 2024 is not considered a current employee under this Agreement. (*Id.* ¶ 13, PAGEID 5744-5745.)

3

> <u>Group B Settlement Class</u>: All healthcare workers who entered the United States through Defendant's Passport USA program at any point from March 16, 2010 to February 15, 2024, who do not submit a timely and valid written notice of intent to opt-out, and who as of February 15, 2024: (1) had left Heath Carousel before the end of their Commitment Period and failed to pay Health Carousel any "liquidated damages"; or (2) are current employees. To be clear, anyone who had completed their Commitment Period as of February 15, 2024 is not considered a current employee under this Agreement. (*Id.* ¶ 14, PAGEID 5745.)

> <u>Settlement Collective</u>: Group A Settlement Class Members who paid Health Carousel some or all "liquidated damages" for leaving before the end of their Commitment Period and who timely opt into the FLSA portion of this Settlement. (*Id.* ¶¶ 28-29, PAGEID 5747.)

Under the Settlement Agreement, Group A Settlement Members will receive monetary relief, and Group B Settlement Members will receive non-monetary relief. Group B Settlement Class Members who are also Group A Settlement Class Members will receive both monetary and non-monetary relief. Group A and Group B Settlement Class Members are collectively referred to as Settlement Class Members herein and in the parties' Settlement.

For the consideration discussed below, the Settlement Class Members who do not opt out will release and forever discharge Health Carousel from any and all liabilities, attorneys' fees, obligations, duties, undertakings, agreements, contracts, claims, demands, damages, proceedings, actions, causes of action, and defenses to causes of action of every kind, nature, and character, which Settlement Class Member had, has, or will have for events occurring from the beginning of time through February 15, 2024 *that were or could have been raised in this case given the facts alleged in the operative complaint.* (*Id.* ¶ 59, PAGEID 5757-5758 (emphasis in original).) Settlement Collective Members will additionally release their claims under the FLSA through February 15, 2024. (*Id.* ¶ 60, PAGEID 5758.)

## B. Monetary Relief and Settlement Allocations

In consideration for the release of the Settlement Class and Collective Members' claims,

Health Carousel will pay $6,050,000 into a common fund from which all awards and allocated amounts will be distributed (the "Gross Settlement Amount"). (*Id.* ¶¶ 12, 37, PAGEID 5744, 5750.) The Gross Settlement Amount is approximately 50% of the amount of "liquidated damages" paid by the proposed Settlement Class to Health Carousel. (Declaration of Anna P. Prakash in Support of Prelim. Approval ("Prakash Prelim. Approval Decl.") ¶ 29, PAGEID 1610, ECF No. 73-1.) All settlement administration expenses, service awards for the proposed Class Representative, and proposed Class Counsel's attorneys' fees and costs, if approved by the Court, will be paid from the common fund. (Amend. Agrmt. ¶¶ 12, 37, PAGEID 5744, 5750, ECF No. 85-1.) All remaining money—the Net Settlement Fund—will be allocated to Group A Settlement Class and Collective Members as follows:

Group A Settlement Class Members who completed their contract with Health Carousel as of February 15, 2024, shall each receive an equal amount based on gross allocations of $2,000 each. (*Id.* ¶ 38(a), PAGEID 5750.) This is an anticipated net payment of $1,256 each, but the precise amount will depend on the any Court-awarded fees, etc. (Declaration of Anna P. Prakash in Support of Final Approval ("Prakash Final Approval Decl.") ¶ 8.)

Group A Settlement Class Members who are current employees working in the United States as of February 15, 2024, shall each receive an equal amount based on gross allocations of $1,000 each. (Amend. Agrmt. ¶ 38(b), PAGEID 5750, ECF No. 85-1.) This is an anticipated net payment of $628 each, but the precise amount will depend on the any Court-awarded fees, etc. (Prakash Final Approval Decl. ¶ 9.) Notably, these current employees shall also receive the benefit of non-monetary relief described below. (Amend. Agrmt. ¶ 35, PAGEID 5749-5750, ECF No. 85-1.)

The pool of money remaining in the Net Fund after the allocations described above are

made, shall be allocated to Group A Settlement Class Members who as of February 15, 2024, paid Health Carousel money in connection with terminating their employment. (*Id.* ¶ 38(c), PAGEID 5750-5751.) Specifically, the remaining pool of money shall be divided pro rata based on the amount each Class Member paid Health Carousel and then rebalanced to decrease the pro rata amounts by 30% for Settlement Class Members who do not opt into the Settlement Collective. (*Id.*) Net before-tax payments are anticipated to range from a guaranteed floor of $300 for those who do not opt into the Settlement Collective to approximately $4,290 for those who do, resulting in midpoint of $2,295, but the precise amount will depend on the any Court-awarded fees, etc. (Prakash Final Approval Decl. ¶ 12; *see also infra* <u>Background</u> Pt. IV (explaining change from amounts estimated at preliminary approval).) Before any payments are made, the actual amount of employer-side payroll taxes associated with each payment described in this paragraph shall be returned to Health Carousel. (Amend. Agrmt. ¶ 38(c), PAGEID 5751, ECF No. 85-1.) The total amount of such money returned to Health Carousel shall be capped at $20,000 and, to the extent Health Carousel has tax obligations above $20,000, no further portion of the Gross Settlement Fund will be used to satisfy those obligations. (*Id.*)

### C. Non-Monetary Relief

The Settlement also provides significant non-monetary relief to current employees and employees who left before the end of their Commitment Period but did not pay Health Carousel the entire amount Health Carousel contends is owed.

For Group B Settlement Class Members who, as of February 15, 2024 were **not** current employees, Health Carousel shall forgive any disputed debt owed to Health Carousel related to "liquidated damages," along with full discharge of any non-disputed debt for all loans owed to Health Carousel. (*Id.* ¶ 33, PAGEID 5748.) The value of this debt is approximately $8,300,000,

with an average of $9,000 per person. (Prakash Prelim. Approval Decl. ¶ 29, PAGEID 1610, ECF No. 73-1.)

Group B Settlement Class Members who, as of February 15, 2024, were current employees shall also not be subject to "liquidated damages" and, rather, if they were to leave before the end of their Commitment Periods, they would only owe Health Carousel actual costs and expenses, including Health Carousel's quantifiable expenses for the benefit of the employee, consistent with the FLSA and other applicable law. (Amend. Agrmt. ¶ 35, PAGEID 5749, ECF No. 85-1.) Before it begins any collection efforts, Health Carousel shall provide the employee an itemized list of the expenses it has actually incurred and is seeking to recover. Health Carousel will then pro-rate the expenses according to the number of hours the employee worked for Health Carousel, relative to the employee's Commitment Period. Health Carousel shall not collect any amounts exceeding the prorated expenses. (*Id.*)

Further, for three years following the date of Final Approval unless Health Carousel is otherwise obligated to take action by law, a court, or governmental agency, for all newly executed Passport USA contracts: The Commitment Period will be defined to include all regular-time, overtime, and orientation hours; and Health Carousel's liquidated damages provision will be replaced with a provision outlining terms described above. (*Id.* ¶ 36, PAGEID 5749-5750.)

Health Carousel has also agreed to permanently remove the workplace rule alleged in this Action as prohibiting "gossip." (*Id.* ¶ 31, PAGEID 5748.) For healthcare workers' assignments commencing and contracts healthcare workers sign after the date of Final Approval, Health Carousel will: (a) advise prospective employees to discuss their contract with an attorney; (b) notify prospective employees that Health Carousel's Passport USA contract offer is valid for 30 days after it is presented to the prospective employee. If the prospective employee requests

additional time to consult with an attorney, Health Carousel shall extend the offer by an additional 30 days; and (c) provide a FAQ primer to prospective employees that describes their rights and obligations under their specific visas, including explaining that EB-2 and EB-3 visas are not tied to a specific employer. (*Id.* ¶ 32, PAGEID 5748.) And although Health Carousel represents that, to its actual knowledge, it has never communicated any potential negative immigration consequences to EB-2 and EB-3 visa holders who indicate they want to leave before their Commitment Period has been completed, Health Carousel agrees that it will never communicate any potential negative immigration consequences to EB-2 and EB-3 visa holders who indicate they want to leave before their Commitment Period has been completed. (*Id.* ¶ 34, PAGEID 5748-5749.)

### D.   Distribution of Settlement Funds

If the Court grants Final Approval of this Settlement, Health Carousel will implement the non-monetary relief provided in the Settlement immediately. (*Id.* ¶¶ 31-36, PAGEID 5748-5750.) Within five days of the Effective Date of the Settlement, Health Carousel shall pay the Gross Settlement Amount to the fund established by the Settlement Administrator. (*Id.* ¶¶ 69-71, PAGEID 5761.) Within fourteen days of receiving the funds, the Settlement Administrator will deposit Settlement Class Members' payments into the bank account that Health Carousel last had on file or, if Settlement Class Members elected another payment method, make the payment via that method. (*Id.* ¶¶ 69-71 and Exs. 2-5, PAGEID 5761, 5775-5826.) Class Counsel and the Class Representative will be paid at the same time as the Class. (*Id.* ¶¶ 69-71, PAGEID 5761.) Thirty days after funds are distributed, the Settlement Administrator will mail and email the Payment Acceptance Reminder Notice to those Settlement Class Members for whom payment could not be made or who have not accepted payment. (*Id.* ¶¶ 21, 71 PAGEID 5746, 5761.) The Settlement

Administrator shall cause such unclaimed funds to be sent to the appropriate state departments thirty days following the reminder. (*Id.* ¶ 71, PAGEID 5761.)

## III.    Notice and Related Events Following Settlement and Preliminary Approval.

### A.    CAFA Notice

On April 2, 2024, the Settlement Administrator distributed notice pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA Notice" or "CAFA Packet"). (Declaration of Bryn Bridley ("Bridley Decl.") ¶ 4.) The Settlement Administrator sent the CAFA Notice to the Attorneys General of 48 states and to the Attorney General of the United States. Forty-seven (47) of the forty-nine (49) total CAFA Notices were sent by U.S. Priority Mail and two (2) were sent by email at state Attorneys General's requests. (*Id.*)

Each CAFA Packet included a cover letter accompanied by a CD-ROM that contained the (a) Third Amended Complaint, (b) Joint Motion for Preliminary Settlement Approval, (c) Proposed Preliminary Approval Order (d) proposed Notices of Settlement, (e) Settlement Agreement, (f) Proposed Final Approval Order, and (g) a list of Class Members residing in each Attorneys General's respective state and their estimated allocated award amounts. (*Id.* ¶ 5.)

### B.    Preliminary Approval and Class Notices

The Court granted Preliminary Settlement Approval on June 18, 2024. (ECF No. 86.)

#### 1.    The Class List

On July 1, 2024, Health Carousel's counsel sent the Settlement Administrator data files with the name, last known address, social security number, start date and other employment specific information for healthcare workers who entered the United States through Defendant's Passport USA program at any point from March 16, 2010 to February 15, 2024. (Bridley Decl. ¶ 6.) The Settlement Administrator used this data and the parties' input to compile the Class List. (*Id.*) Although some addresses were missing, the Settlement Administrator was able to locate

9

and/or update addresses by utilizing the National Change of Address database maintained by the United States Postal Service ("USPS") prior to sending Notices. (*Id.* ¶ 7.) This process returns address updates for any person that has filed a change of address card with the USPS in the four (4) years prior. (*Id.*)

### 2. Postcard Notice

On July 9, 2024, the Settlement Administrator mailed the Postcard Notice by U.S. first class mail. (*Id.* ¶ 8.) Over the course of the notice period, 165 Postcard Notices had been returned to the Settlement Administrator as undeliverable without forwarding address information. (*Id.*) The Settlement Administrator sent 154 of the undeliverable records to a professional search firm for address tracing, which found new address for 122 records. (*Id.*) The Settlement Administrator promptly remailed to the 122 new addresses. (*Id.*) Twelve (12) of the remailed Postcard Notices were returned to the Settlement Administrator a second time, with nine (9) of those returned on or after the Objection and Opt-Out Deadline. (*Id.*)

### 3. FLSA Reminder Notice

On July 30, 2024, the Settlement Administrator mailed the FLSA Reminder Postcard to 561 putative Collective Members that were eligible to but had not yet submitted opt-in forms. (*Id.* ¶ 9.)

### 4. Settlement Website and Long Form Notices

The Settlement Administrator obtained the URL www.healthcarouselsettlement.com and established the content on that website to serve as the Settlement Website. (*Id.* ¶ 10.) The Settlement Website includes answers to frequently asked questions about the case, important dates and deadlines, the Settlement Administrator's contact information, access to the FLSA Opt-In and Release Form, a method of payment election form, and the Long Form Notices approved by the

Court. (*Id*.) The website has remained continuously operational since activation and has received 3,489 visits to date. (*Id.*)

### 5. Additional Class Members

After the close of the 60-day notice period, Health Carousel confirmed that it had inadvertently omitted 110 people from the Class List. (Prakash Final Approval Decl. ¶ 4.) After discussing the same with the Court and with the Court's approval, the Settlement Administrator emailed, texted, and called the 110 people. (Bridley Decl. ¶ 15.) As of the date of this filing, none of the 110 have opted out or objected. (*Id*.) As authorized by the Court, they have a deadline of October 16 to do so. (*Id*.) Should any of the 110 object or opt out by that deadline, the parties will file a supplement to this motion.

### C. Class Members' Response

The Settlement Administrator also obtained and activated a toll-free number, which was provided on the Settlement Website and the Notices, as was the Settlement Administrator's email address. (*Id.* ¶ 11.) To date, the Settlement Administrator has received 296 emails, 50 calls, and 67 voicemails related to this Settlement. (*Id*.) Class Counsel, too, have received numerous emails and calls. (Prakash Final Approval Decl. ¶ 3.) Of the 631 people eligible to opt into the FLSA portion of this settlement, 191 submitted valid and timely consent forms to the Settlement Administrator, and Ms. Carmen's consent form was filed with the Court in the course of litigation. (Bridley Decl. ¶ 12; *see* Consent Form, PAGEID 902, ECF No. 38-1.) Three (3) class members submitted timely requests to opt out of the Settlement. (Bridley Decl. ¶ 13.)[2] And three submitted timely objections.[3] (ECF Nos. 88, 89, 90.)

---

[2] One was a current employee and two were employees who had completed their Commitment Period. (Bridley Decl. ¶¶ 13.)
[3] The three objectors are current employees. (Bridley Decl. ¶¶ 13.)

### D. Fee Petition

On August 23, 2024, Class Counsel and the Class Representatives filed their Motion for Attorneys' Fees, Costs, Service Payments, and Settlement Administration Expenses. (ECF No. 87.) As agreed by the parties, this motion was filed two weeks before the close of the objection and opt-out period and posted on the Settlement Website. (Amend. Agrmt. ¶ 67, PAGEID 5760, ECF No. 85-1; Bridley Decl. ¶ 14.) None of the objections takes issue with the motion. (ECF Nos. 88, 89, 90.) And while Health Carousel did not provide a clear-sailing provision, it did not file an opposition brief by the Objection Deadline or the motion deadline set by local rule. Health Carousel continues to take no position on the motion for fees and other requested awards.

## IV. Summary of Relevant Statistics and Numbers

After adding the 110 Settlement Class Members identified after the 60-day notice window and reviewing the data, the putative Settlement Class is as shown here:



(Prakash Final Approval Decl. ¶ 6.)[4] Of the 4,119 putative Settlement Class Members:

- 4,066 people or 98.7% were successfully sent notice, i.e., email or mail did not bounce back after new addresses were identified.

- 3 people or 0.07% opted out.

- 3 people or 0.07% objected.

- Given the exclusion requests, there are now 1,459 current employees who are part of Group A. If the Settlement is approved, they will each receive their net share of $1,000 (estimated to be $628). 110 of those people are the Settlement Class Members identified after the close of the notice period.

- Given the exclusion requests, there are now 1,764 employees who completed their Commitment Period and are part of Group A. If the Settlement is approved, they will each receive their net share of $2,000 (estimated to be $1,256).

- After the $1,000 and $2,000 payments are made, 20% of the net fund is expected to remain for distribution to the remainder of Group A, i.e., the 631 people (15% of the Settlement Class) who paid Health Carousel any amount of "liquidated damages."

  *Note: The net fund did not dip below 15% with the addition of the 110 Settlement Class Members identified after the close of the notice period because (1) Class Counsel initially overestimated the costs and administrative expenses they would eventually seek; and (2) after deduping and reviewing data before sending notice, the total number of originally-identified Settlement Class Members was reduced. As a result, even with the addition of these 110 Settlement Class Members, Settlement Class Members still receive amounts within the range of possible recoveries contained in the Class Notice.*

- All 631 people who paid Health Carousel any amount of "liquidated damages" will receive between $300 and $4,290 as explained below.

- All 262 people who left Health Carousel before the end of their Commitment Period and did not pay Health Carousel any "liquidated damages" will have their debt forgiven.

- All 77 people who paid Health Carousel some but not all "liquidated damages" will have their remaining debt forgiven.

---

[4] Although the Settlement Administrator removed obvious duplicates prior to sending notice, it is likely that due to name changes or similar issues there are additional duplicates within the 4,119 records. The Settlement Administrator will endeavor to identify any such duplicates by using social security numbers or other available data from Health Carousel prior to distributing funds. (Bridely Decl. ¶ 7.)

(Prakash Final Approval Decl. ¶¶ 6-13; Bridley Decl. ¶ 16.) Of the 631 people who were eligible to opt into the FLSA portion of this case:

- 191 people or 30% of those eligible to opt in did so.

- For those who opted in, their estimated net recoveries range from $304 to $4,290.

- For those who did not opt in, their estimated net recoveries range from $300 to $1,784.

- The midpoint of recovery for the 631 people is $2,295.

> *Note: This is consistent with the range of possible recoveries listed in the Notices. (Amend. Agrmt. Exs. 2-5, PAGEID 5775-5826, ECF No. 85-1.) Though counsel estimated a midpoint of $3,000 in their preliminary approval brief, that was based on the assumption that those who had paid Health Carousel the most in "liquidated damages" were likely to opt in. They did not. And because allocations are to be divided pro rata based on how much each person paid to Health Carousel, this skewed the numbers at preliminary approval upward. The additional 110 Settlement Class Members identified after the close of the notice period only decreased the maximum payment to this group by approximately $390. (Prakash Final Approval Decl. ¶¶ 6-13.)*

(*Id.* ¶¶ 6-13.) Class Counsel and the Class Representatives have requested attorneys' fees of $2,016,666 (which is one-third of the $6,050,000 common fund or, under the lodestar approach, based on a multiplier of 1.98.), $77,136.77 in out-of-pocket costs, $43,092 for the expenses of the settlement administrator, and service payments of $5,000 each to Dr. Amistoso and Ms. Flores, and $10,000 to Ms. Carmen. (ECF No. 87.)

The parties now request Final Approval of their Settlement.

## ARGUMENT

### I.    The Court Should Confirm Certification of the Settlement Classes.

The Court provisionally certified the Settlement Classes in its preliminary approval order. (*See* Prelim. Approval Order at 33, PAGEID 5868, ECF No. 86.) For the reasons the parties stated at preliminary approval (*see generally* Prelim. Approval Mem. at 16-28, PAGEID 1568-1580, ECF No. 73), as summarized below, they respectfully request that the Court confirm certification ***as to***

14

*the federal TVPA and RICO claims only*. (*See* Prelim. Approval Order at 14-15, PAGEID 5849-50, ECF No. 86 (discussing concerns about certifying state law claims).) Although the parties agree to dismissal of the state law claims brought in this case upon Final Approval, as well as the FLSA claims, the release language in this case—which Settlement Class Members received in the Notices—releases those state law claims as they are part of the same "factual predicate" of the federal claims. *See Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 900 (6th Cir. 2019) ("[T]he question is not whether the definition of the claim in the complaint and the definition of the claim in the release overlap perfectly; it is whether the released claims share a 'factual predicate' with the claims pled in the complaint.") (*See also* Amend. Agrmt., PAGEID 5757-58, ECF No. 85-1.) And there are no Settlement Class Members that would only have state and not federal TVPA and RICO claims, as alleged. Similarly, those that opted into the FLSA portion of this case did so after having received notice that opting in would release FLSA claims. (*See* Ex. 4 to Amend. Agrmt., PAGEID 5797-5808, ECF No. 85-1; Ex. 7 to Amend. Agrmt., PAGEID 5824-26, ECF No. 85-1.) And all those who opted in also have federal TVPA and RICO claims, as alleged. As such, confirming certification for only the federal TVPA and RICO claims would not leave any Settlement Class Member in a different position than they would have been under the Court's order provisionally certifying the Settlement Class on all claims.[5]

The parties now request that the Court confirm certification of the following classes on the

---

[5] The Sixth Circuit does not recognize "certification" in the FLSA context. *See Clark v. A&L Homecare & Training Ctr., LLC*, 64 F.4th 1003, 1009 (6th Cir. 2023). Accordingly, the parties requested only authorization to send notice to putative collective members, which the Court granted. (Prelim. Approval Order at 31 n.6, PAGEID 5866-67, ECF No. 86.) Relatedly, this Court has held that it has no authority to approve or deny FLSA settlements. *See Gilstrap v. Sushinati, LLC*, __ F. Supp. 3d __, 2024 WL 2197824, at *13 (S.D. Ohio May 15, 2024). So, at this Final Approval stage, the parties seek final approval of their Rule 23 Settlement only. Some Settlement Class Members will be releasing FLSA claims that overlap with their other federal claims, but they will be doing so having made an affirmative choice to release those claims.

federal TVPA and RICO claims:

> Group A Settlement Class: All healthcare workers who entered the United States through Defendant's Passport USA program at any point from March 16, 2010 to February 15, 2024, who do not submit a timely and valid written notice of intent to opt-out, and who as of February 15, 2024: (1) paid Health Carousel some or all "liquidated damages" for leaving before the end of their Commitment Period; (2) completed their Commitment Period; or (3) are current employees. To be clear, anyone who had completed their Commitment Period as of February 15, 2024 is not considered a current employee under this Agreement.

> Group B Settlement Class: All healthcare workers who entered the United States through Defendant's Passport USA program at any point from March 16, 2010 to February 15, 2024, who do not submit a timely and valid written notice of intent to opt-out, and who as of February 15, 2024: (1) had left Heath Carousel before the end of their Commitment Period and failed to pay Health Carousel any "liquidated damages"; or (2) are current employees. To be clear, anyone who had completed their Commitment Period as of February 15, 2024 is not considered a current employee under this Agreement.

As summarized below, these Settlement Classes satisfy the Rule 23 elements of certification.

### A. Numerosity is Satisfied.

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, excluding those who have opted out of the Settlement, there are 3,857 Group A Settlement Class Members and 1,799 Group B Settlement Class Members. Numerosity is satisfied. *See Pansiera v. Home City Ice Co.*, 341 F.R.D. 223, 231 (S.D. Ohio 2022) (acknowledging numerosity is often found at just 40 members).

### B. Commonality is Satisfied.

Rule 23 requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This case challenges conduct stemming from nearly identical contractual arrangements between Health Carousel and the Settlement Class Members. Every Settlement Class Member was subject to the same allegedly coercive practices and contractual terms, including the provision requiring payment if one were to leave before the end of their Commitment Period. Each was recruited from

16

outside of the United States as a healthcare worker for one of Health Carousel's clients. These similarities matter because the allegations in this case focus on the legality of the contract, the consequences of not completing one's Commitment Period, and the general manner in which workers were recruited and brought into the United States. Because the core questions in this case could be answered with common proof or, at the very least, involve examining Health Carousel's common policies and practices, commonality is satisfied. *See, e.g., Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (finding commonality satisfied where the plaintiffs challenge "a single practice or course of conduct"); *see also Paguirigan v. Prompt Nursing Emp. Agency LLC,* No. 17-cv-1302-NG-JO, 2018 WL 4347799, at *1 (E.D.N.Y. Sept. 12, 2018) (certifying a class of nurses recruited from the Philippines and making similar allegations).

### C.    Typicality is Satisfied.

Typicality is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Here, Plaintiffs' claims arise from the same set of facts as the Settlement Class Members. Plaintiffs and the Settlement Class Members are healthcare workers from abroad who were recruited into the Passport USA program. They were subject to contracts and other practices described above. Health Carousel placed Plaintiffs and Settlement Class Members at healthcare facilities run by Health Carousel's clients. While working for Health Carousel, Plaintiff Carmen came to know she would have to pay "liquidated damages" if she left before the end of her Commitment Period, alleged she worked longer than she would have absent the "liquidated damages," and ultimately paid, aligning her with the Group A Settlement Class Members. Absent this Settlement, Health Carousel would attempt to collect "liquidated damages" from Plaintiff Amistoso and Flores, aligning them with the Group B Settlement Class Members. Accordingly, Plaintiffs are typical. *See Beattie v. CenturyTel, Inc.*, 511

F.3d 554, 561 (6th Cir. 2007) (A class representative's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.") (quotation omitted).

> **D.** **Adequacy is Satisfied.**

The adequacy inquiry ensures that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts in the Sixth Circuit consider two criteria for determining adequacy of a class representative: "1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). Both requirements are met.

Ms. Carmen, Dr. Amistoso, and Ms. Flores are adequate class representatives. Like the Group A Settlement Class Members who are current employees, Ms. Carmen worked under Health Carousel's contract, including terms governing the Commitment Period. She worked longer than she might otherwise have worked given the contract, which sufficiently aligns her with Group A Settlement Class Members who completed their Commitment Period. (*See* Declaration of Novie Dale Carmen in Support of Prelim. Approval ("Carmen Prelim. Approval Decl.") ¶¶ 6-8, PAGEID 1785, ECF No. 73-4.) And like Group A Settlement Class Members who paid Health Carousel all or a portion of their "liquidated damages" for leaving early, Ms. Carmen paid Health Carousel $20,000 for leaving before the end of her Commitment Period. (*Id.*) Dr. Amistoso and Ms. Flores are in the same situation as Group B Settlement Class Members who left before the end of their Commitment Period but did not pay Health Carousel any portion of their "liquidated damages." (*See* Declaration of Kersteen B. Flores in Support of Prelim. Approval ("Flores Prelim. Approval Decl.") ¶¶ 5-7, PAGEID 1788-89, ECF No. 73-6.; Declaration of Jerlin C. Amistoso in Support of

Prelim. Approval ("Amistoso Prelim. Approval Decl.") ¶¶ 5-7, PAGEID 1786-87, ECF No. 73-5.) They would have also benefited from the programmatic changes Health Carousel is making for current employees had they remained employed.

Moreover, all three Plaintiffs are committed to this case. (*See* Carmen Prelim. Approval Decl. ¶ 9, PAGEID 1785, ECF No. 73-4; Flores Prelim. Approval Decl. ¶¶ 7-8, PAGEID 1789, ECF No. 73-6; Amistoso Prelim. Approval Decl. at ¶¶ 7-8, PAGEID 1787, ECF No. 73-5; Declaration of Novie Dale Carmen in Support of Mot. for Fees, Costs, Admin. Exp., Serv. Paymt. ("Carmen Fees Decl.") ¶¶ 2-14, PAGEID 5969-71, ECF No. 87-2; Declaration of Jerlin C. Amistoso in Support of Mot. for Fees, Costs, Admin. Exp., Serv. Paymt. ("Amistoso Fees Decl.") ¶¶ 2-13, PAGEID 5973-75, ECF No. 87-3; Declaration of Kersteen B. Flores in Support of Mot. for Fees, Costs, Admin. Exp., Serv. Paymt. ("Flores Fees Decl.") ¶¶ 2-12, PAGEID 5976-78, ECF No. 87-4.) Importantly, each is informed of and approves of this Settlement, which could not have been reached for the more than 4,000 Settlement Class Members without Ms. Carmen initiating this action in the first place and without all of the Class Representatives seeing this case through discovery and mediation. (*See* Carmen Fees Decl. ¶ 14, PAGEID 5971, ECF No. 87-2; Amistoso Fees Decl. ¶ 13, PAGEID 5975, ECF No. 87-3; Flores Fees Decl. ¶ 12, PAGEID 5978, ECF No. 87-4.)

Class Counsel is also adequate as detailed in the declarations and resumes submitted at preliminary approval and as explained in the pending motion for fees. They are all experienced class action litigators and, through their pleading and bringing of this case, motion practice, discovery, and settlement negotiations, have been able to achieve significant relief for the Settlement Class. (*See* Prakash Prelim. Approval Decl. ¶¶ 4-26, PAGEID 1599-1608, ECF No. 73-1; Declaration of David H. Seligman in Support of Prelim. Approval ("Seligman Prelim. Approval

19

Decl.") ¶¶ 2-26, PAGEID 1790-95, ECF No. 73-7; Declaration of Robert E. DeRose in Support of Prelim. Approval ("DeRose Prelim. Approval Decl.") ¶¶ 2-18, PAGEID 1796-99, ECF No. 73-8; Declaration of Bryce W. Ashby in Support of Prelim. Approval ("Ashby Prelim. Approval Decl.") ¶¶ 2-15, PAGEID 1838-41, ECF No. 73-9; Declaration of Jennifer Dale Bennett in Support of Prelim. Approval ("Bennett Prelim. Approval Decl.") ¶¶ 2-11, PAGEID 1842-47, ECF No. 73-10; Declaration of Anna P. Prakash in Support of Mot. for Fees, Costs, Admin. Exp., Serv. Paymt. ("Prakash Fees Decl.") ¶¶ 19-38, PAGEID 5923-5929, ECF No. 87-1; Mot. for Fees, Costs, Admin. Exp., Serv. Paymt. at 28-31, PAGEID 5908-5911, ECF No. 87.)

**E.     The Group A Settlement Class Meets the Requirements of Rule 23(b)(3).**

Rule 23(b)(3) asks whether "questions of law or fact common to class members predominate over any questions affecting only individual members" and whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, predominance and superiority are satisfied for settlement purposes.

As to predominance, each Group A Settlement Class Member was subject to a similar recruitment process and similar contract terms. Those who completed their Commitment Period did so under the contract, including its terms providing for "liquidated damages" to be paid to Health Carousel if they did not. Those who are currently working for Health Carousel are doing so under similar terms. Those who left Health Carousel and paid any portion of the "liquidated damages" did so pursuant to the terms of the contract. These important facts would drive resolution of this litigation and, here, support predominance. *See Davis v. GEICO Cas. Co.*, No. 2:19-cv-2477, 2021 WL 5877843, at *8 (S.D. Ohio Dec. 13, 2021) (recognizing "a question of contract interpretation across all Class Members' identical Policies" as "subject to generalized proof applicable class wide."); *see, e.g., Paguirigan*, 2018 WL 4347799, *8  (granting certification,

focusing on reasonable person standard, "not whether each individual felt compelled to continue her employment."); *Magtoles v. United Staffing Registry, Inc.*, No. 21-cv-1850-KAM-PK, 2022 WL 1667005, at *8 (E.D.N.Y. May 25, 2022) (finding common issues predominated regarding whether contract and liquidated damages provision constitute serious harm). Moreover, under this Settlement, all Group A Settlement Class Members will receive a payment, with those who completed their Commitment Period receiving more than those who are still working and those who paid all or a portion of the "liquidated damages" receiving a proportional refund, as well as cancelation of any "liquidated damages" still owed. Predominance is satisfied.

Superiority is also satisfied for settlement purposes. Resolving this matter as a class action will achieve economies of time, effort, and expense, and promote uniformity of results. Here, the Settlement Class Members are recent immigrants to the United States who may not choose to spend resources and time on individual litigation at this stage of their lives here. And it is possible that individual cases paired with likely recoveries—particularly for people Health Carousel contends owe *it* money—could be cost-prohibitive. *See Beattie*, 511 F.3d at 566-67 (when "the amount of a single class member's potential recovery [is] small… class resolution [is] superior to other methods of adjudicating the controversy"). Counsel not are aware of any Group A Settlement Class Members who are interested in individually controlling the prosecution of separate actions. And because this class is being certified for settlement purposes only, potential manageability issues are not a concern. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[.]").

For all of these reasons, the Court should confirm certification of the Group A Settlement Class on the federal TVPA and RICO claims.

**F.      The Group B Settlement Class Meets the Requirements of Rule 23(b)(2).**

A class action may be maintained under Rule 23(b)(2) if Rule 23(a) is satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Under the Settlement, Health Carousel is taking action that would apply to Group B Settlement Class Members as whole by forgiving alleged debt for "liquidated damages" and changing its practices such that no Group B Settlement Class Members will be subject to "liquidated damages" going forward. Rather, if workers who were current employees as of February 15, 2024 fail to complete their Commitment Period, they shall only owe Health Carousel actual costs and expenses, which shall be prorated based on the number of hours the employee has worked towards her Commitment Period. The cancelation of "liquidated damages" across the board is the type of injunctive relief that binds the Group B Settlement Class. *See Legere-Gordon v. Firstcredit Inc.*, No. 1:19-cv-360-WBS, 2021 WL 276695, at *6 (D. Idaho Jan. 26, 2021) (noting the "uniformity of this conduct with respect to each putative class member" in granting certification of a settlement class under Rule 23(b)(2)). Health Carousel's other programmatic changes apply to its program and policies as a whole and, thus, also support certification. *In re LifeLock, Inc. Mktg. & Sales Pracs. Litig.*, No. 08-mdl-1977-MHM, 2010 WL 11627648, at *3 (D. Ariz. Aug. 31, 2010) ("Certification is also warranted based on… shared interests of the Class Members in securing further declaratory and injunctive relief[.]").

For all of these reasons, the Court should certify the Group B Settlement Class on the federal TVPA and RICO claims.

**II.      The Court Should Grant Final Approval of the Parties' Settlement.**

To determine whether a Rule 23 class action settlement agreement is "fair, reasonable, and

adequate," courts consider whether:

A) the class representatives and class counsel have adequately represented the class;

B) the proposal was negotiated at arm's length;

C) the relief provided for the class is adequate, taking into account:

i) the costs, risks, and delay of trial and appeal;
ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
iii) the terms of any proposed award of attorney's fees, including timing of payment; and
iv) any agreement required to be identified under Rule 23(e)(3); and

D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Courts analyze these factors in addition to those outlined by the Sixth Circuit in *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. General Motors Corp.* ("*UAW*"), 497 F.3d 615 (6th Cir. 2007). The *UAW* factors are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631. There is a "strong presumption by courts in favor of settlement" in class actions. *In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001).

### A. Plaintiffs and Class Counsel Have Adequately Represented the Class and Collective and Support the Proposal - Rule 23(e)(2)(A) and *UAW* Factor 5.

"[I]n the context of approving class action settlements, the Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Smith v. Ajax Magnethermic Corp.*, No. 4:02-cv-0980, 2007 WL 3355080, at *5 (N.D. Ohio Nov. 7, 2007) (*quoting Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir. 1983)).

Class Counsel has significant experience in class and collective action litigation and

settlements, including those under the FLSA, TVPA, and RICO. (*See* Prakash Prelim. Approval Decl. ¶¶ 4-26, PAGEID 1599-1608, ECF No. 73-1; Seligman Prelim. Approval Decl. ¶¶ 2-26, PAGEID 1790-95, ECF No. 73-7; DeRose Prelim. Approval Decl. ¶¶ 2-18, PAGEID 1796-99, ECF No. 73-8; Ashby Prelim. Approval Decl. ¶¶ 2-15, PAGEID 1838-41, ECF No. 73-9; Bennett Prelim. Approval Decl. ¶¶ 2-11, PAGEID 1842-47, ECF No. 73-10.) They have zealously represented the proposed Settlement Class throughout this case and settlement negotiations and will continue doing so through the conclusion of the settlement process. (*See* Prakash Fees Decl. ¶¶ 14-38, PAGEID 5920-29, ECF No. 87-1; Declaration of David H. Seligman in Support of Mot. for Fees, Costs, Admin. Exp., Serv. Paymt. ("Seligman Fees Decl.") ¶¶ 2-7, PAGEID 5979-83, ECF No. 87-5; Declaration of Bryce W. Ashby in Support of Mot. for Fees, Costs, Admin. Exp., Serv. Paymt. ("Ashby Fees Decl.") ¶¶ 2-6, PAGEID 5984-86, ECF No. 87-6; Declaration of Jennifer Dale Bennett in Support of Mot. for Fees, Costs, Admin. Exp., Serv. Paymt. ("Bennett Fees Decl.") ¶¶ 2-6, PAGEID 5987-88, ECF No. 87-7; DeRose Prelim. Approval Decl. ¶¶ 2-18, PAGEID 1796-99, ECF No. 73-8.)

The Class Representatives, too, have fulfilled their duties to the class by, among other things, initiating this lawsuit, communicating regularly with Class Counsel, participating in discovery, attending mediation, and reviewing the proposed Settlement. (*See* Carmen Fees Decl. ¶¶ 2-14, PAGEID 5969-71, ECF No. 87-2; Amistoso Fees Decl. ¶¶ 2-13, PAGEID 5973-75, ECF No. 87-3; Flores Fees Decl. ¶¶ 2-12, PAGEID 5976-78, ECF No. 87-4.) They believe it is in the best interest of the Settlement Class. (*See* Carmen Fees Decl. ¶¶ 2-14, PAGEID 5969-71, ECF No. 87-2; Amistoso Fees Decl. ¶¶ 2-13, PAGEID 5973-75, ECF No. 87-3; Flores Fees Decl. ¶¶ 2-12, PAGEID 5976-78, ECF No. 87-4.) So does Class Counsel. (Prakash Final Approval Decl. ¶ 15.)

Accordingly, Rule 23(e)(2)(A) and *UAW* Factor 5 support approval.

**B.** **The Proposal Was Negotiated at Arm's Length Without Fraud or Collusion - Rule 23(e)(2)(B) and *UAW* Factor 1.**

There is no fraud or collusion here. At the time of mediation in December 2023, the parties had just completed contentious discovery and were not optimistic about settlement. (Prakash Fees, Decl. ¶¶ 36-37, PAGEID 5928-29, ECF No. 87-1; Bryan Prelim. Approval Decl. ¶¶ 6-12, PAGEID 1752-53, ECF No. 73-2.) They spent the majority of mediation in their respective rooms as Judge Welsh of JAMS shuttled back and forth. (Bryan Prelim. Approval Decl. ¶ 9, PAGEID 1753, ECF No. 73-2.) And mediation ran well past the close of business, with the parties reaching agreement on key terms as evening began. (*Id.* ¶ 10, PAGEID 1753.) After mediation, the parties continued arms-length negotiations between counsel for nearly three months, exchanging numerous drafts and seeking Judge Welsh's assistance to help the parties reach agreement on an outstanding term. (Prakash Fees Decl. ¶¶ 36-37, PAGEID 5928-29, ECF No. 87-1; Bryan Prelim. Approval Decl. ¶¶ 12-15, PAGEID 1753, ECF No. 73-2; Prakash Prelim. Approval Decl. ¶ 21, PAGEID 1605-06, ECF No. 73-1.) Critically, no portion of the Gross Settlement Fund will revert to Health Carousel and the up to $20,000 for employer-side payroll taxes that will be "returned" to Health Carousel will be paid to the government. (Bryan Prelim. Approval Decl. ¶ 24, PAGEID 1755, ECF No. 73-2; Prakash Prelim. Approval Decl. ¶ 33, PAGEID 1611, ECF No. 73-1.) And the Settlement contains no clear sailing provision for any contemplated fees, costs, or service payments. (Amend. Agrmt. ¶¶ 40-41, PAGEID 5751-52, ECF No. 85-1.) Counsel for both parties aver that all negotiations were at arms-length and believe this Settlement is fair, reasonable, and adequate. (Prakash Fees Decl. ¶¶ 36-37, PAGEID 5928-29, ECF No. 87-1; Bryan Prelim. Approval Decl. ¶¶ 12-15, PAGEID 1753, ECF No. 73-2; Prakash Prelim. Approval Decl. ¶ 21, PAGEID 1605-06, ECF No. 73-1.) This supports approval. *See Clark v. Miller Valentine Partners Ltd.*, No. 1:20-cv-295, 2023 WL 5087233, at *5 (S.D. Ohio Aug. 8, 2023) (finding that "months of analysis and

25

considerable arms-length good-faith negotiations between the parties" supports approval).

C. **The Proposal Provides Adequate Relief to the Settlement Class – Rule 23(e)(2)(C) and UAW Factors 2-4.**

1. **The Settlement Benefits are Adequate and the Proposal Treats Settlement Class Members Equitably Relative to Each Other – Rule 23(e)(2)(C) and Rule 23(e)(2)(D).**

a. **The Settlement Provides Adequate Relief.**

The Settlement relief in this case is adequate and important. The Gross Settlement Amount is $6,050,000, Health Carousel is forgiving approximately $8,300,000 of disputed debt, and Health Carousel is changing its practices such that Settlement Class Members who leave the company before the end of their Commitment Period will benefit from prorated and reduced amounts tied directly to amounts Health Carousel expended primarily for the benefit of employees.

Notably, the $6,050,000 Gross Settlement Amount represents approximately half of what Settlement Class Members paid Health Carousel for leaving before the end of their Commitment Period and approximately 20% of Class Counsel's approximation of what a jury would award, i.e., 20% of the $29,000,000 demanded at mediation. When considering $8,300,000 in debt forgiveness, the value of the Settlement grows to $14,350,000 or nearly 50% of Plaintiffs' demand at mediation. (Prakash Fees Decl. ¶¶ 39-40, PAGEID 5929-30, ECF No. 87-1.) While the programmatic changes do not have a specific dollar amount attached to them, they are significant because they limit the types of costs that Health Carousel can collect and increase transparency of these practices for those who choose to leave Health Carousel in the future. This pushes the value of this Settlement above 50% of Plaintiffs' mediation demand. Even considering an unlikely jury award in the three-hundred million range, the total recovery here would be around five percent, which is still meaningful given all of the circumstances discussed above. Courts routinely approve settlements with recoveries at these levels. *See, e.g., In re Polyurethane Foam Antitrust Litigation*,

No. 1:10-md-2196, 2015 WL 1639269, at *5 (N.D. Ohio Feb. 26, 2015) ("A settlement figure that equates to roughly 18 percent of the best-case-scenario classwide [damages] is an impressive result in view of these possible trial outcomes."); *Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 WL 757123, at *8 (S.D. Ohio Feb. 18, 2021) (citing *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) for the acknowledgment that, "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses") (internal quotations omitted); *Andrews v. State Auto Mutual Ins. Co.*, No. 2:21-cv-5867, 2023 WL 7018839, at *6 (S.D. Ohio Oct. 25, 2023) (citing *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) for its explanation that the average recovery in class actions is 7-11% of claimed damages); *see also Magtoles v. United Staffing Registry, Inc.*, No. 1:21-cv-01850-PK, ECF No. 80 (Mar. 11, 2024) (granting final approval of a settlement fund of $1.6 million for 250 migrant nurses subject to contracts with liquidated damages after the plaintiffs succeeded in certifying class and were granted affirmative summary judgment).

Moreover, each of the 1,460 current employees will receive approximately $628, each of the 1,766 employees who completed their Commitment Period will receive approximately $1,256, and each of the 631 people who paid Health Carousel any amount of "liquidated damages" will receive between $300 and $4,290. Because the average amount of "liquidated damages" paid to Health Carousel is just under $13,000, a midpoint recovery of $2,295 is close to 18% of each Settlement Class Member's out-of-pocket damages. And each of the 339 former employees who Health Carousel contends owe "liquidated damages" will have their debt forgiven. (*See* Prakash Final Approval Decl. ¶¶ 6-13.) This is well within the range of reasonableness. *See In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d at 715.

### b. The Settlement Provides Equitable Relief.

The Settlement is also equitable. It distributes money to Group A Settlement Class Members who paid Health Carousel for leaving their jobs before the end of their Commitment Periods, who worked for Health Carousel for the entirety of their Commitment Period, and who as of February 15, 2024, were current Health Carousel employees. Settlement Class Members are treated equitably within and across each of these groups because the amount they would receive under the Settlement is based on the "differences among their claims" and "scope of the release," Fed. R. Civ. P. 23 advisory committee's note to 2018 amendments, as well as the type and extent of alleged injuries. *See Fusion Elite All Stars v. Varsity Brands, LLC*, No. 2:20-cv-02600-SHL-MP, 2023 WL 6466398, at *5 (W.D. Tenn. Oct. 4, 2023) ("Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.") (internal quotations omitted); *In re Flint Water Cases*, 571 F. Supp. 3d 746, 774 (E.D. Mich. 2021) ("People who were similarly situated would be treated in a similar way…. This promotes fairness, particularly in litigation such as this where there are different levels of exposure and severity of injury."); *see also Hawes v. Macy's Inc.*, No. 1:17-cv-754, 2023 WL 8811499, at *12 (S.D. Ohio Dec. 20, 2023) (finding distribution treated class members equitably even though it did not treat them equally). And though employees who were still working at Health Carousel as of February 15, 2024 would receive less than those who completed their Commitment Period and could receive less than those who paid Health Carousel "liquidated damages," those current employees will receive valuable programmatic relief. *See Volz v. Coca Cola Co.*, No. 1:10-cv-879, 2015 WL 1474958, at *2 (S.D. Ohio Mar. 31, 2015) (recognizing value of injunctive relief).

Further, because Settlement Class Members who paid Health Carousel are no longer current employees and did not complete their Commitment Periods, their Settlement allocations

are tied to the amounts they paid Health Carousel. This "pro rata" method of allocating funds is sound. *See Satterly v. Airstream, Inc.*, No. 3:19-cv-107, 2020 WL 6536342, at *8 (S.D. Ohio Sept. 25, 2020) (*pro rata* distribution "ensures an equitable distribution of settlement proceeds that is directly tied to the claims of and harm allegedly suffered by the settlement class members and will provide them with a proportionate share of the settlement funds"); *Fusion Elite*, 2023 WL 6466398, at *5; *see also In re Flint Water Cases*, 571 F. Supp. 3d at 782–83.

Further still, it is fair that Settlement Class Members who choose to release their FLSA claims will receive more than those who do not. *See e.g., Peregrina v. Seam Group, LLC*, No. 1:20-cv-01032-SO, Agreement, ECF No. 20-3 (N.D. Ohio March 29, 2021) at PAGEID 218 ("the initially weighted amounts shall be reduced by 10% for Settlement Class Members who do not timely become Settlement Collective Members") and PAGE ID 224 (releasing TVPA, Title VII, Section 1981 claims for Settlement Class Members and additionally releasing FLSA claims for Settlement Collective Members), Final Approval Order, ECF No. 26 (N.D. Ohio Aug. 30, 2021) (granting approval); *Davis v. Omnicare, Inc.*, No. 5:18-cv-142-REW, 2021 WL 1214501, at *12 (E.D. Ky. Mar. 30, 2021) ("20% premium" for those who had already opted into the action); *Combs v. Trugreen Ltd. Partnership*, No. 1:08-cv-489, 2010 WL 11636094, at *6 (S.D. Ohio Sept. 2, 2010); *see Ware v. CKF Enterprises, Inc.*, No. 5:19-cv-183-DCR, 2020 WL 2441415, at *16 (E.D. Ky. May 12, 2020) ("Some class members will ostensibly release more claims than others, but this discrepancy derives from the fact some class members will be opt-in plaintiffs who more broadly release claims related to the FLSA.").

The non-monetary relief is also fair. Any Settlement Class Member, who as of February 15, 2024, owed Health Carousel money will have that debt forgiven. And all current employees as of February 15, 2024, will benefit from the changed practices described above.

There is also "horizontal equity" with respect to the overall allocation methodology. *See In re Flint Water Cases*, 571 F. Supp. 3d at 782–83. That is, the objective criteria driving the method of allocation for monetary and non-monetary relief are whether Settlement Class Members (1) paid money; (2) allegedly owe money; (3) completed their contract; and (4) are current employees. Equitable, even if not equal, treatment based on such objective factors counsels in favor of approval. *See id.; see also Hawes*, 2023 WL 8811499, at *12; *Combs*, 2010 WL 11636094, at *6 (granting approval where allocations were based on an "objective index of recovery."). And this is not a case in which "the settlement gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed Class Members." *Humphrey v. Stored Value Cards*, No. 1:18-cv-01050, 2021 WL 110786, at *5 (N.D. Ohio Jan. 12, 2021). Rather, as to their allocations, Class Representative Carmen will be treated just the same as any other Settlement Class Member who paid Health Carousel and the upward adjustment for her amount is the same for all others who, like her, opted into the case. Class Representatives Amistoso and Flores, too, will receive the same erasure of debt that all Settlement Class Members who have alleged debt will receive.[6] This equitable treatment aligns with Rule 23.

### 2. The Complexity, Expense, Likelihood of Success on the Merits, Amount of Discovery, Risks, and Delay of Trial and Appeal Support Approval - Rule 23(e)(2)(C)(i) and *UAW* Factors 2-4.

The relief provided through this Settlement is all the more important given the complex and uncertain nature of this case. The operative complaint contains ten separate counts, nine of which Plaintiffs would seek to certify under Rule 23 and one of which Plaintiff Carmen would

---

[6] Plaintiffs acknowledge that each Class Representative has requested a modest service payment, but as explained in that request, this is consistent with awards in similar circumstances, a small portion of the overall Gross Settlement Amount, and is reasonable considering the general release each is providing to Health Carousel and their work on this matter. (*See* Mot. for Fees, Costs, Admin. Exp., Serv. Paymt. at 13-18, PAGEID 5893-5898, ECF No. 87.)

seek to certify under the FLSA. And the case law is mixed on issues of certification and merits. *See e.g., Estavilla v. Goodman Grp., LLC*, No. 21-cv-68-M-KLD, 2022 WL 539192, at *2, 13 (D. Mont. Feb. 23, 2022) (granting motion to dismiss nurse's complaint); *Panwar v. Access Therapies, Inc.*, No. 1:12-cv-00619-TWP, 2015 WL 1396599, at *3 (S.D. Ind. Mar. 25, 2015) (denying healthcare workers' motion for summary judgment); *Paguirigan v. Prompt Nursing Employ. Agency, LLC*, No. 17-cv-1302-NG, 2019 WL 4647648 (E.D.N.Y. Sept. 24, 2019) (granting partial summary judgment to certified class of nurses); *Magtoles v. United Staffing Registry, Inc.*, No. 21-cv-1850-KAM-PK, 2023 WL 2710178, at *7 (E.D.N.Y. Mar. 30, 2023) (finding that liquidated damages clause in standard employment contract between healthcare professionals and staffing company was unenforceable). *See also In re Nationwide Fin. Servs. Litig.,* No. 2:08-cv-00249, 2009 WL 8747486, at *4 (S.D. Ohio Aug. 19, 2009) (noting that the risk of continued litigation includes the risk that there could be no recovery at all); *Shanechian v. Macy's*, No. 1:07-cv-828, 2013 WL 12178108, at *4 (S.D. Ohio June 25, 2013) (noting difficulty of proving both liability and damages at trial even where plaintiffs prevailed on previous motions).

Moreover, having completed all fact discovery necessary to move for or oppose class and collective certification and, in Health Carousel's view, to move for summary judgment on the Plaintiffs' individual claims, the parties are well-informed of the record and how it stacks up against the law. (Prakash Prelim. Approval Decl. ¶¶ 18-21, 32, PAGEID 1604-06, 1610-11, ECF No. 73-1; Bryan Prelim. Approval Decl. ¶¶ 7-8, PAGEID 1752-53, ECF No. 73-2.) Given the mixed case law, there is risk in continued litigation. (Prakash Prelim. Approval Decl. ¶ 32, PAGEID 1610-11, ECF No. 73-1; Bryan Prelim. Approval Decl. ¶¶ 8, PAGEID 1752-53, ECF No. 73-2.) *See, e.g.*, *Miller Valentine Partners*, 2023 WL 5087233, at *5-6 ("By agreeing to the Settlement, these risks are eliminated, and participating Class Members are guaranteed an adequate

31

recovery now rather than possibly receiving recovery years from now (or perhaps never or less than the amount agreed to now).").

As to expense, Class Counsel have already spent nearly $80,000 in out-of-pocket expenses and incurred over $1,000,000 in fees. (*See* Mot. for Fees, Costs, Admin. Exp., Serv. Paymt. at 23-25, 31-33, PAGEID 5903-05, 5911-13, ECF No. 87). If litigation were to continue, there would be merits discovery, damages experts, and trial to get through. (*See* Prelim. Approval Mem. at 38-40, PAGEID 1590-92, ECF No. 73.) *See Smith*, at *3 (finding that the potential for substantial expense related to further discovery and experts weighed in favor of settlement approval).

In terms of time to resolution, the parties expected to complete class certification briefing by summer 2024. (Prakash Prelim. Approval Decl. ¶ 26, PAGEID 1607-08, ECF No. 73-1.) Assuming the Court ruled within months, one party or the other would likely seek review under Rule 23(f). (*Id.*) Indeed, in light of the hotly contested nature of the issues in this case and the likelihood that one or both parties would eventually seek review from the Sixth Circuit, Class Counsel includes a renowned appellate firm. (*Id.*) Merits discovery and damage experts would likely take several more months following a final decision on class certification, and dispositive motion practice would likely not conclude until the end of 2025, putting the parties' trial date at somewhere near the fall of 2026, with appeals to follow. (*Id.*) The proposed Settlement avoids all of this and, if approved, will likely result in payment to the Settlement Class and Collective this year. That, too, weighs in favor of approval. *See Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d at 899 (finding that the risk of "potentially long and protracted litigation" and a settlement providing for material relief to the defendant's business practices weighed in favor of approval).

32

### 3. The Proposed Method of Distributing Relief is Effective - Rule 23(e)(2)(C)(ii).

No Settlement Class Member will have to make a claim to get paid. In other words, payments will be automatic to all Group A Settlement Class Members. And those payments will be made via direct deposit to the last bank account Health Carousel had on file for each Settlement Class Member. This avoids the delay and uncertainty of mailing checks. To the extent any Group A Settlement Class Member wished to receive their payment another way, they had the option to request that of the Settlement Administrator. In this way, distribution is effective and consistent with Settlement Class Members' wishes. Moreover, the cancelation of debt associated with "liquidated damages" will be automatic because Health Carousel will simply cease collection. Health Carousel has already begun to implement some of its other programmatic changes. This supports approval.

### 4. The Terms of Any Proposed Award of Attorney's Fees, Including Timing of Payment, are Fair - Rule 23(e)(2)(C)(iii).

Class Counsel has filed a detailed fee petition that includes their request for fees, litigation expenses, costs of the Settlement Administrator, and service payments for the Named Plaintiffs. In the Settlement Agreement, Health Carousel provided no clear sailing provision on fees and costs and explicitly reserved the right to object to the Class Representative service payments. (Amend. Agrmt. ¶¶ 40-41, PAGEID 5751-52, ECF No. 85-1.) Health Carousel has since decided not to object and takes no position on the requested awards, but that decision was made well after the parties executed the Agreement and well after notice issued to the Settlement Class. (Prakash Final Approval Decl. ¶ 19.) The lack of collusion on this point supports this factor.

Further, if awarded, Class Counsel and the Class Representatives would be paid at the same time as the Class, avoiding preferential treatment. (Amend. Agrmt. ¶¶ 69-70, PAGEID 5760-61,

ECF No. 85-1.) Moreover, the $2,016,666 requested for fees is one-third of the Gross Settlement Amount, which is typical of attorneys' fee awards in class cases. *See, e.g.*, *Fitzgerald v. P.L. Mktg., Inc.*, No. 2:17-cv-2251, 2020 WL 7764969, at *12 (W.D. Tenn. Feb. 13, 2020) ("The one-third contingency fee arrangement reflected in the Settlement Agreement is 'certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit.'") (*quoting In re Se. Milk Antitrust Litig.*, No. 2:07-cv-208, 2012 WL 12875983, at *2 (E.D. Tenn. July 11, 2012)). And under the lodestar approach, the requested fee yields a mere 1.9 multiplier, also well within the range approved in this District. *See Karpik*, 2021 WL 757123, at *8 ("Because of the inherent risks of litigation, courts in this district award multipliers of between approximately 2.0 and 5.0."); *Smith v. Fifth Third Bank*, No. 1:18-cv-722, 2021 WL 11713313, at *7 (S.D. Ohio August 31, 2021) ("[M]ost courts agree that the typical lodestar multiplier in a large class action ranges from 1.3 to 4.5.")*; In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (awarding a lodestar multiplier of 6.0). The costs requested are out-of-pocket costs of $77,136.77, which were incurred over the course of the last four years for filing fees, electronic research, depositions, experts, travel, photocopies, postage, and the like. (*See* Prakash Fees Decl. ¶¶ 8-13, PAGEID 5917-20, ECF No. 87-1; Seligman Fees Decl. ¶ 6, PAGEID 5982, ECF No. 87-5; Ashby Fees Decl. ¶ 6, PAGEID 5986, ECF No. 87-6; Bennett Fees Decl. at ¶ 6, PAGEID 5988, ECF No. 87-7.) Courts typically approve these types of costs. *See New England Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (approving costs that included *"*cost associated with maintaining an electronic database; computerized research; travel and lodging expenses; photocopying cost; filing and witness fees; postage and overnight delivery; and the cost of court reporters and depositions"). The same is true for costs of the Settlement

34

Administrator, which are capped at $43,092 and were incurred in carrying out the fulsome notice process described above and other administration activities. (*See* Prakash Fees Decl. ¶¶ 5-7, PAGEID 5916-17, ECF No. 87-1; Bridley Decl. ¶¶ 17.) These types of costs are typically awarded. *See Retina Assocs. Med. Grp., Inc. v. Keeler Instruments, Inc.*, No. 18-cv-01358, 2019 WL 13043767, at *7 (C.D. Cal. Dec. 13, 2019) (approving settlement administrator costs of $43,142.74 for a class of 3,881 members); *Rotondo v. JPMorgan Chase Bank, N.A.*, No. 2:19-cv-2328, 2019 WL 6167086 (S.D. Ohio Nov. 20, 2019) (approving settlement administrator costs of $50,000 for a class of 5,035 members). Finally, the Class Representatives' requested service payments of $5,000, $5,000, and $10,000 are modest in the context of this case, amounting to between 0.08% and 0.17% of the Gross Settlement Amount, and, in Class Counsel's and the Class Representatives' view, were earned through the hard work of bringing and participating in this case and seeing it through. (Carmen Fees Decl. ¶¶ 2-14, PAGEID 5969-71, ECF No. 87-2; Amistoso Fees Decl. ¶¶ 2-13, PAGEID 5973-75, ECF No. 87-3; Flores Fees Decl. ¶¶ 2-12, PAGEID 5976-78, ECF No. 87-4.) The law supports these awards. *See e.g., Pansiera v. Home City Ice Co.*, No. 1:19-cv-1042, 2024 WL 813759, at *7-8 (S.D. Ohio Feb. 27, 2024) (awarding class representative $10,000 service award because he "assisted with document review and production, and he was also deposed during the litigation, resulting in several hours of aggressive questioning."); *Andrews*, 2023 WL 7018839, at *8 (awarding class representative $10,000 service award because of their involvement in "all aspects of litigation including investigation, mediation, and discovery requests.").

No Settlement Class Member has objected to the requested attorneys' fees, service payments, and administration expenses. This, too, supports approval. *See, e.g., Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010).

**5.** **There are No Agreements Required to be Identified under Rule 23(e)(3) – Rule 23(e)(2)(C)(iv).**

There are no side agreements. (Prakash Prelim. Approval Decl. ¶ 32 PAGEID 1610-11, ECF No. 73-1; Bryan Prelim. Approval Decl. ¶ 22, PAGEID 1755, ECF No. 73-2.) The Settlement Agreement is the parties' only agreement. (Prakash Prelim. Approval Decl. ¶ 32 PAGEID 1610-11, ECF No. 73-1; Bryan Prelim. Approval Decl. ¶ 22, PAGEID 1755, ECF No. 73-2.)

**6.** **The Reaction of the Absent Class Members and the Public Interest Support Settlement – *UAW* Factors 6 and 7.**

First, the parties reiterate that the Settlement Class was provided notice consistent with Rule 23(e)(1). The notice program was robust, with the Postcard Notice, Notices on the Settlement Website, Reminder FLSA Notice, and phone and email support. *See Hummel v. Teijin Automotive Techs., Inc.*, No. 2:23-cv-10341, 2024 WL 4278752, at *2-3 (E.D. Mich. Sept. 24, 2024) (finding a notice program where postcards were sent to class members and notices posted on a settlement website was the "best notice practicable under the circumstances"). Each of the originally-identified Settlement Class Members had 60 days to review the notices and determine whether to remain in the settlement, exclude themselves, or object. *See Carr v. Guardian Healthcare Holdings, Inc.*, No. 2:20-cv-6292, 2022 WL 501206, at *4-5 (S.D. Ohio Jan. 19, 2022) (finding that notice plan, which included 60-day notice period, weighed in favor of approval).

For the 110 newly identified Settlement Class Members, notice was provided by email, with reminders by text and phone. These newly identified Settlement Class Members had 29 days to review the notices and determine whether to remain the settlement, exclude themselves, or object. (Prakash Final Approval Decl. ¶ 5.) This is sufficient. *See Hunter v. Booz Allen Hamilton Inc.*, No. 2:19-cv-00411, 2023 WL 3204684, at *5 (S.D. Ohio May 2, 2023) (finding that the notice program, which included a 28 day notice period for individuals who were identified after the start

of the notice period, was the "best notice that is practicable"); *Miller v. Republic Nat. Life Ins. Co.*, 559 F.2d 426, 429-30 (5th Cir. 1977) (finding a notice period of "almost four weeks" sufficient time for class members to respond); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975) (finding a notice period of 19 days was sufficient); *United Founders Life Ins. Co. v. Consumers Nat. Life Ins. Co.*, 447 F.2d 647, 652 (7th Cir. 1971) (finding a notice period of 25 days was sufficient).

In total, notice is estimated to have reached 98.7% of the Settlement Class. The notice program was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Booz Allen Hamilton Inc.*, 2023 WL 3204684, at *5; *see Stephens v. ADS All. Data Sys., Inc.*, No. 2:20-cv-2152, 2024 WL 958331, at *1 (S.D. Ohio Mar. 5, 2024) (approving settlement where 98% of class were mailed notice that did not ultimately come back as undeliverable).

Second, of those eligible to opt into the FLSA portion of this case, 30% did. This is a large percentage in the context of opt-in actions and speaks to class members' support of the Settlement framework. (Prakash Final Approval Decl. ¶ 11.)

Third, only three of the 4,119 putative Settlement Class Members excluded themselves from the settlement. This strongly supports approval. *See Stephens*, 2024 WL 958331, at *1 (approving settlement where two of 4,256 class members opted out).

Finally, three Settlement Class Members have objected. This is only 0.07% of the Settlement Class, which again, is incredibly minor in this context. More importantly, the three objections—which are nearly identical in form and substance, down to the word—are meritless. Though, Class Representative and Class Counsel can sympathize with the objectors' views, the objections request relief that this lawsuit did not seek or simply could not be achieved in Settlement

because of the realities of Health Carousel's business. For these reasons, as explained in more detail below, the Court should overrule all three objections.

> **a.** **The Court Should Overrule the Three Objections Filed in this Case.**

Settlement Class Members Fairy Anne Kristine Quinto, Jennifer Balancio Gallardo, and Nazelyn Anne Dongalo Garsuta objected to the Settlement on September 5, 2024 and September 6, 2024, and the court staff filed the objections via ECF on September 10, 2024 and September 16, 2024. (ECF Nos. 88-90.) These Settlement Class Members state two grounds for their objections:

> ➢ We object to the Health Carousel's claim that the Commitment Period in all Passport USA executed after March 18, 2024, shall count regular time, overtime, and orientation hours.
>
> *This should also Include the current employees who have also signed the contracts dated before March 18, 2024 and are still fulfilling the assignment contracts up to this date. It appears unfair for us current employees that we are not granted with such privilege that we believe we deserve. The claim should not just be limited to those who just signed the contract after March 18, 2024.*
>
> ➢ We object to the amount that we will receive which will be approximately $628 if the Court awards the fees, costs, and other amounts the lawyers intend to request.
>
> *While we are thankful for the possible amount that we will receive In the Settlement, we want Health Carousel to retroactively pay the difference that the healthcare facilities paid for our services versus the hourly wages that Health Carousel has actually paid us.*

(ECF Nos. 88-90.)[7] Neither ground supports denying Final Approval.

---

[7] Ms. Dongalo Garsuta also "demands transparency of all documents that will provide evidence that Health Carousel has not violated FLSA." (ECF No. 89, PAGEID 5993.) But this request misunderstands how settlements work. The parties settled before any finding on the merits and before the conclusion of discovery. While the parties each believe in the strength of their respective positions, they settled to avoid the cost, expense, time, and risk of continued litigation to the merits, taking into account the incomplete discovery to date.

    i.  **Changing the Commitment Period for Current Employees is Unworkable Because of Health Carousel's Existing Contracts with its Healthcare Facility Clients.**

The Settlement Agreement considers "current employees" any healthcare worker who entered the United States through Health Carousel's Passport USA program at any point from March 16, 2010 to February 15, 2024. (Amend. Argmt. ¶ 14, PAGEID5745.) The non-monetary relief the Settlement provides to current employees is closely tied to the allegations in this case. For current employees, Health Carousel will stop seeking "liquidated damages," will only be able to recover actual costs and expenses from early-departing healthcare workers, will provide workers an itemized list of such costs and expenses before attempting collection, and will pro rate costs and expenses based on the amount of the Commitment Period the worker has completed. (*Id.* ¶ 35, PAGEID5749.) That Commitment Period is the same as the Commitment Period stated in the contract current employees signed when they joined Health Carousel, i.e., it includes regular-time hours but not overtime or orientation hours. (Prakash Final Approval Decl. ¶¶ 16-18.)

The Settlement provides that, for three years following Final Approval, for all newly executed Passport USA contracts, regular-time, overtime, and orientation hours will count toward the Commitment Period. (First Amend. Agmt., ¶ 36, PAGEID5750.) The objectors complain that, as current employees, their overtime and orientation hours will not count towards their Commitment Period. (PAGEID5991, ECF No. 88; PAGEID 5993, ECF No. 89; PAGEID 5995, ECF No. 90.)

But changing the Commitment Period for current employees is unworkable. Health Carousel will be able to update its contracts with its clients (the healthcare facilities) before future employees sign their contracts. For current employees, however, Health Carousel has already made a contractual commitment to each of its clients with respect to which hours will be paid at which

rate and for how long it will provide the healthcare worker's services to those clients. (Prakash Final Approval Decl. ¶¶ 16-18.) Health Carousel cannot guarantee the ability to renegotiate contracts with its clients for current employees who are already working for those clients. (*Id.*) In fact, when Class Counsel advocated for this change during settlement, negotiations, defense counsel explained that the nature of Health Carousel's existing contracts foreclosed that option. (*Id.*) For this reason, the Court should overrule this portion of the objections. *See, e.g.*, *In re Airline Ticket Com'n Antitrust Litig.*, 953 F. Supp. 280, 285 (D. Minn. 1997) (overruling objections because they requested an "unworkable proposal" that would be "almost impossible to implement").

### ii. Plaintiffs Did Not Seek Damages Equal to the Difference Between what Health Carousel's Clients Paid Health Carousel and what Health Carousel Paid its Workers.

The objectors complain that they are not being awarded the difference between what Health Carousel's clients pay Health Carousel and what Health Carousel pays to workers. (PAGEID5991, ECF No. 88; PAGEID 5993, ECF No. 89; PAGEID 5995, ECF No. 90.) But Plaintiffs' lawsuit never sought damages for that difference. (Prakash Final Approval Decl. ¶ 18.) In fact, Plaintiffs doubt they could successfully seek these damages under the law, particularly when arguing that Health Carousel already received the value of its "liquidated damages" amount from its clients. (*Id.*) *See also U.S. v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1200-02 (D.C. Cir. 2005) (holding that disgorgement is not an available remedy under civil RICO claims). Accordingly, the Court should overrule this portion the objections, as well. *See Skochin v. Genworth Fin., Inc.*, No. 3:19-cv-49, 2020 WL 6532833, at *19 (E.D. Va. Nov. 5, 2020) (overruling objections that requested a remedy from the defendant that the plaintiffs could not obtain and did not seek); *Schulte v. Fifth*

*Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011) (overruling objections that requested a remedy from the defendant that the plaintiffs did not seek).

**b.      The Public Interest Supports Final Settlement Approval.**

Finally, as to the public interest, "[p]ublic policy generally favors settlement of class action lawsuits." *Stephens*, 2024 WL 958331, at *5 (internal quotations omitted). "In this case, the Settlement confers immediate benefits on the Class Members, avoids the risks and expense in further litigation, and conserves judicial resources." *Id.* This, too, supports approval.

## CONCLUSION

The parties respectfully request that the Court grant Final Approval.

Respectfully submitted this 8th day of October, 2024.

<table>
<tr><td>

**NICHOLS KASTER, PLLP**


s/ Anna P. Prakash
Anna P. Prakash, MN Bar No. 0351362*
Joshua R. Cottle, NY Bar No. 5914676*
aprakash@nka.com
jcottle@nka.com
4700 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Phone: (612) 256-3200
Fax: (612) 338-4878


s/ Robert E. DeRose
Robert E. DeRose (OH Bar No. 0055214)
**BARKAN MEIZLISH DEROSE
WENTZ MCINERNEY PEIFER, LLP**
bderose@barkanmeizlish,com
250 East Broad Street, 10th Floor
Columbus, OH 43215
Phone: (614) 221-4221


**DONATI LAW**
bryce@donatilaw.com
1545 Union Avenue

</td><td>

**TAFT STETTINIUS & HOLLISTER LLP**


s/ Beth A. Bryan
Beth A. Bryan (0082076)
Spencer S. Cowan (0099556)
Russell S. Sayre (0047125)
Kenneth A. Foisy (0095904)
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Telephone: (513) 357-9460
Facsimile: (513) 381-0205
bryan@taftlaw.com
scowan@taftlaw.com

*ATTORNEYS FOR HEALTH CAROUSEL, LLC*

</td></tr>
</table>

41

Memphis, TN 38104
Phone: (901) 209-5500

David H. Seligman, CO Bar No. 49394*
Valerie Collins, MD Bar*
**TOWARDS JUSTICE**
david@towardsjustice.org
PO Box 371680
PMB 44465
Denver, CO 80237-5680
Phone: (720) 295-1672

Jennifer Dale Bennett CA Bar No. 296726*
**GUPTA WESSLER, PLLC**
jennifer@guptawessler.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Phone: (415) 573-0336
Fax: (202) 888-7792

*CLASS COUNSEL*
*admitted pro hac vice*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above was filed electronically on October 8, 2024. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s Anna P. Prakash
Anna P. Prakash